OPINION
The appellant, Donald Haywood, Sr. ("appellant"), appeals the judgment of the Allen County Court of Common Pleas granting permanent custody of his three children to the Allen County Children Services Board ("ACCSB"). For the following reasons, we affirm the judgment of the trial court.
This case involves three children born to the appellant and Rebecca Newland: Donald (born January 10, 1990), Anthony (born December 25, 1990), and Tyler Haywood (born January 2, 1993). On April 24, 1998, ACCSB filed a complaint in dependency for Donald and Tyler and in dependency and abuse for Anthony. ACCSB alleged that the appellant's live-in girlfriend was physically abusing Anthony and the other two boys were in danger of being abused.[1] A hearing was held on July 14, 1998 and the boys were adjudicated to be dependent children. Also at this time, Anthony was adjudicated to be an abused child. ACCSB was granted temporary custody of the boys and a guardian ad litem was appointed to represent the interests of the boys.
On March 18, 1999, ACCSB filed a motion for permanent custody of the boys. The guardian ad litem filed a report dated June 9, 1999, wherein he recommended that it was in the best interest of the boys to grant permanent custody to ACCSB. A hearing on the motion for permanent custody was commenced on August 17, 1999 in the Allen County Court of Common Pleas, Juvenile Division. At the conclusion of the day on August 17, the hearing was continued until and completed on September 13, 1999. On August 18, 1999, the guardian ad litem filed a supplemental report in which he changed his initial recommendation. In this report, he recommended that the motion be denied since the appellant had substantially completed the case plan goals that were established for him in order to be reunified with his children. On October 7, 1999, the trial court filed a judgment entry granting ACCSB permanent custody of the boys. It is from this judgment that the appellant now appeals.
Assignment of Error No. 1
 Whether the trial court erred as a matter of law in finding by clear and convincing evidence that it was in the best interest of the Haywood children to be placed in the permanent custody of the Allen County Children Services Board? [sic]
 A trial court conducting a hearing on a motion for permanent custody must follow the guidelines set forth in R.C. 2151.414. Pursuant to R.C. 2151.353(A)(4), the court may grant such a motion if two determinations are made. The court must determine by clear and convincing evidence, after a child has been found by the court to be neglected, dependent, or abused, that it is in the child's best interest to grant the movant permanent custody "and that any of the following apply:
 (1) The child is not abandoned or orphaned and the child cannot be placed with either of his parents within a reasonable time or should not be placed with his parents;
 (2) The child is abandoned and the parents cannot be located;
 (3) The child is orphaned and there are no relatives of the child who are able to take permanent custody."
R.C. 2151.414(B)(1) through (3).
When determining what is in the child's best interest, R.C.2151.414(D) mandates that the court consider "all relevant factors, including, but not limited to, the following:
 (1) The reasonable probability of the child being adopted, whether an adoptive placement would positively benefit the child, and whether a grant of permanent custody would facilitate an adoption;
 (2) The interaction and interrelationship of the child with his parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 (3) The wishes of the child, as expressed directly by the child or through his guardian ad litem, with due regard for the maturity of the child;
 (4) The custodial history of the child;
 (5) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency."
 Further, if the court has determined, based on R.C. 2151.414(B)(1), that a child cannot or should not be placed with the parents within a reasonable time (as determined by the trial court in this case), the court must consider all relevant evidence, finding, by clear and convincing, that one of eight conditions exists that would prohibit placement of the child with one of his parents. In re Brown (1994), 98 Ohio App.3d 337, 342.
A reviewing court may not reverse a trial court's judgment based on the weight of the evidence presented, since the judge, when acting as the trier of facts, is in the best position to weigh the evidence and evaluate the testimony. Id. Pursuant to R.C. 2151.414, a permanent custody determination must be supported by clear and convincing evidence. Id., see e.g., In re Davis
(June 3, 1994), Defiance App. Nos. 4-93-25 through 4-93-27, unreported. Clear and convincing evidence is more than a mere preponderance of the evidence. Rather, a petitioner must prove each of its allegations, clearly and convincingly, producing "in the mind of the trier of facts a firm belief of conviction as to the facts sought to be established." In re Adoption of Holcomb
(1985), 18 Ohio St.3d 361, 368, quoting Cross v. Ledford (1954),161 Ohio St. 469.
At the permanent custody hearing, Dale Agnew, the ACCSB caseworker assigned to this matter, testified that a case plan had been developed to facilitate the reunification of the children and the parents. The case plan essentially required the appellant to do four things: (1) to obtain and maintain a safe and suitable home, (2) to remove Kim Davis from the household, (3) to maintain regular contact with the children, and (4) complete parenting classes. Mr. Agnew testified that over a ten-month period forty visits had been scheduled between the appellant and the boys and the appellant only kept five of the appointments. The appellant had no other contact with the children. He further testified that the appellant failed to maintain contact with the ACCSB and workers were often unable to locate him. While the appellant had eventually stopped living with his girlfriend, the person accused of abusing Anthony, he had failed to obtain stable living arrangements for himself. When ACCSB was able to locate him, he was "floating from place to place." The appellant was enrolled in parenting classes through a referral by ACCSB, however he only attended one session.[2] At the continuation of the hearing, on September 13, 1999, Mr. Agnew testified that between the two hearing dates, the appellant had one visitation session with the boys. He further testified that the appellant had begun renting a three-bedroom house.
The appellant testified that he stopped attending the regular visits scheduled by ACCSB because he "got tired of dealing with them (ACCSB)" because they kept changing the rules.[3] He stated that he had informal visits with the boys. Apparently, the appellant would go to the boys' school and visit with them before they went home. Neither the ACCSB nor the foster parents had knowledge of these visits. The appellant is currently working at Nickles' Bakery through a temporary agency and has rented a house with his new girlfriend.
The evidence further indicates that the appellant is delinquent in his support payments for an older son and in the past has gone to jail for non-support. The appellant is also currently involved in a paternity determination case involving a child recently born to the seventeen year-old daughter of Kim Davis, his former girlfriend. The appellant admits having sex with the girl, but denies that he fathered the child.
At the conclusion of the hearing, the trial court found ACCSB had exhausted all efforts and services toward reunification of the children with the parents. The court further found that the parents had failed to comply with the goals and objectives of the case plans. The parents had minimal visitation and no other communication with the children. They failed to attend parenting classes as required.
The trial court found by clear and convincing evidence that each parent had "failed continuously and repeatedly to substantially remedy the conditions causing the children to be placed outside the homes of the parents, that both parents have demonstrated a lack of commitment to the children by failing to regularly support, visit, or communicate with the children when able to do so." The trial court further found that "for whatever reason they have been unwilling to provide food, clothing, and shelter, and other basic necessities inclusive of suitable housing for the children." See R.C. 2151.414(E)(1), (4), and (9). Based on the above evidence, the trial court determined that it was in the best interest of the children for permanent custody to be granted to ACCSB.
In its Judgment Entry for Permanent Custody, the trial court reiterated the basis for its decision and further found that there is a reasonable probability that the children may be adopted and that the children need a legally secure placement, which placement can be achieved only through a grant of permanent custody to the ACCSB.
The appellant argues that the evidence presented was insufficient to support the award of permanent custody. Upon consideration of the law and the entire record of the proceedings in the trial court, this Court finds that there is clear and convincing evidence to support the trial court's findings. Accordingly, the appellant's first assignment of error is overruled.
Assignment of Error No. 2
 Whether the trial court's decision is against the manifest weight of evidence where, it did not consider the recommendation of the guardian ad litem who submitted evidence of appellant's conduct after the filing of the motion for permanent custody, and such evidence is pertinent to show the future conduct of appellant? [sic]
 The appellant argues that the trial court erred by not considering the evidence submitted by the guardian ad litem in his supplemental report concerning the appellant's most recent conduct. For the following reasons, we disagree.
The transcript of the hearing in this matter clearly reflects that the trial court considered the supplemental report submitted by the guardian ad litem. The judge specifically stated the following concerning the report.
 Although the Court certainly is required to and does appreciate the recommendations of the guardian ad litem, the Court is not required to follow the recommendations, and in this case elects not to follow the supplemental report and recommendation of the guardian ad litem.
 In In re Height (1976), 47 Ohio App.2d 203, 206, this Court stated:
 The function of a guardian ad litem or for a representative for the child is to secure for such child a proper defense or an adequate protection of its rights. The ultimate decision in any proceeding is for the judge and not for the representative of the parties and the trial court did not, for that reason, err in making an order contrary to the recommendation of the child's representative."
 See, also, In the Matter of Gilbert (1990), Marion App. Nos. 9-89-3 to 9-89-40, unreported.
Further, the evidence reveals that the appellant was permitted to present evidence concerning his recent conduct. The appellant, Mr. Agnew, and the guardian ad litem all testified without objection concerning the fact that the appellant was employed and had rented a three-bedroom home. There was also testimony concerning the appellant's efforts to visit the boys, which he did during the time between the two hearing dates.
The trial court clearly considered the recommendation of the guardian ad litem, as well as the recent conduct of the appellant, in reaching the conclusion that it was in the best interest of the children for permanent custody to be granted to ACCSB. The trial court was not bound to follow the recommendation of the guardian ad litem.
Accordingly, the appellant's second assignment of error is not well taken.
Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment affirmed.
 ______________________________ HADLEY, PRESIDING JUDGE
 SHAW and WALTERS, JJ., concur.
[1] The appellant, the father of the boys, was incarcerated and had left the boys in the care of his girlfriend at the time of the abuse.
[2] Mr. Agnew's testimony also pertained to the mother's lack of involvement and cooperation with ACCSB, however the mother has not appealed the grant of permanent custody to ACCSB and is not a party to this action. The mother supported the granting of custody to the ACCSB and did not want to see the boys returned to the appellant.
[3] After it was reported that the appellant took the children to the home of Kim Davis, the appellant was no longer permitted to take the children anywhere during the visits. The visits were required to take place at the ACCSB's offices.