JOURNAL ENTRY and OPINION
The juvenile division of the court of common pleas denied a motion by the Cuyahoga County Department of Children and Family Services (the agency) to place children Joshua Nickel and Shane Snow in the agency's permanent custody. The court instead ordered that the two boys reside with their foster parents in a planned permanent living arrangement. Mother Carla Snow appeals, claiming the court lacked authority to render any decision on the agency's complaint for permanent custody because it failed to hold the hearing and render judgment within statutory time limits. The agency cross-appeals, claiming the court lacked clear and convincing evidence to order a planned permanent living arrangement and should have granted the motion for permanent custody. We have given precedence to this appeal as required by App.R. 7(C).
 I
We summarily reject mother's argument that the court failed to make a final disposition within two years of the filing of the complaint for temporary custody for the reason that the agency's motion for permanent custody, filed within twelve months of the court's decision to place the children in the agency's temporary custody, tolled the twelve month period. See R.C. 2151.353(F).
We likewise reject mother's argument relating to the R.C. 2151.35(B)(1) requirementthat a dispositional hearing be conducted within ninety days of a complaint. The agency correctly notes that a motion for permanent custody is not a complaint. The emergency complaint for temporary custody was the complaint in this case and the court conducted a timely hearing from that motion.
Finally, the court did render judgment within seven days of completing the dispositional hearing as required by R.C. 2151.35(B)(3). The court journalized an order dated September 18, 2000 in which it took the matter under advisement and ordered the children's guardian ad litem to submit a report forthwith. The guardian ad litem filed his report that same day. On September 26, 2000, the court journalized its decision. Because the court ordered the guardian ad litem to submit a report, it had not concluded the dispositional hearing as contemplated by R.C.2151.35(B)(3). The court's final dispositional order, entered September 26, 2000, came six days after submission of the guardian ad litem's report. This satisfied the statute. Mother's assignment of error is overruled.
 II
For its cross-appeal, the agency claims that the court abused its discretion by refusing to grant the agency's request for permanent custody and erred by ordering the children into a planned permanent living arrangement.
Before the court may terminate parental rights to a natural child who is neither abandoned nor orphaned and commit that child to the permanent custody of the agency, it must first determine that the child cannot be placed with one of the parents within a reasonable time or should not be placed with either parent and that permanent custody is in the best interest of the child. See R.C. 2151.414(B). The factors the court must consider when making a determination of the child's best interest are contained in R.C. 2151.414(D). The factors the court must consider when making a determination of whether a child can be placed with either parent in a reasonable period of time are contained in R.C. 2151.414(E). The party seeking permanent custody of a child always bears the burden of establishing its allegations by clear and convincing evidence. R.C.2151.414(B). As a reviewing court, we cannot overturn the court's decision to grant permanent custody if that decision is supported by competent, credible evidence. In re Brofford (1992), 83 Ohio App.3d 869,876; In re Brown (1994), 98 Ohio App.3d 337, 342.
The evidence going to the children's best interest under R.C.2151.414(D) conflicted on the issue whether the children have a good relationship with their parents.
The guardian ad litem saw the children several times, both with their parents and in their foster home. The guardian ad litem found the foster parents had provided a stable and caring environment, and the children apparently thought they were safe, probably because of past instances of domestic violence. The guardian ad litem also believed the children responded well to visits with their parents, believing they exhibited an appropriate degree of familial interaction.
The social worker assigned to the case thought that neither child bonded to the parents, nor were the parents able to control the children during visits. The foster parents corroborated the social worker's opinion. Concerns arose when the foster parents began complaining that visitation with the parents made the children unruly, both during the visits and afterwards. The guardian ad litem spoke with both boys about visitation, and learned from them that they enjoyed their visits but wished to remain living with the foster parents. The guardian ad litem could not personally confirm any unruly behavior by the children during visitation.
An additional concern arose when one of the boys told his treating psychologist that he had been molested by an unknown man while his mother held his arms to subdue his resistance. The boy did not disclose the identity of his alleged abuser. Mother denied the allegations and results from a lie detector test confirmed her denial. The agency requested that visitation with the parents terminate based on this allegation, but later withdrew that request. The social worker assigned to the case testified that she would not permit the parents to have unsupervised visitation with the children because of these allegations, but conceded that she did not seek to amend the case plan for sexual abuse counseling. Although the parents initially denied that any abuse had occurred, they subsequently accepted that fact and agreed to become involved with the child's treatment.
The psychologist believed that the childrens' exposure to domestic violence and sexual abuse required counseling. When asked if the parents had become involved in the counseling, the psychologist indicated that she had not spoken to the parents. Mother said she spoke to the psychologist but was told that any participationin the boys' therapy would have to be cleared by the agency, and the social worker did not want the parents involved in the counseling.
Both parents complied with the case plan. Although mother's cocaine use prompted the children's removal (the youngest child, a daughter not involved in this appeal, tested positive for cocaine at birth), the agency's own evidence shows that mother and father have been drug-free for more than one year. The agency complained that mother did not appear for two random drug screenings, although mother said that she had passed all her drug screenings and was voluntarily attending aftercare. The case plan also show that each parent successfully completed parenting classes, maintained regular visitation with the children and had established a stable residence. Father voluntarily took CPR classes and juvenile first aid courses.
Because the evidence of parental bonding conflicted, we cannot question the court's resolution of those conflicts to find that the children were not so obviously distanced from their parents that parental rights should be terminated. The court was in the best position to weigh the evidence and assess the credibility of the witnesses. In re Adoption of Holcomb (1985), 18 Ohio St.3d 361, 367. The evidence could show that the parents made enough progress with their case plan to justify the court's decision that reunification could be a realistic possibility. The children appeared to maintain a positive relationship with the parents and both boys recognized mother and father as their biological parents. Nothing in these findings suggests an abuse of discretion.
We likewise reject the agency's complaint that the court erred by ordering the children into a planned permanent living arrangement.
R.C. 2151.353(A)(5) provides that, as an alternative disposition to placing the children in the permanent custody of a children services agency, the trial court may place the children in a planned permanent living arrangement only if: (1) the agency requests such a placement, and (2) the court finds, by clear and convincing evidence, that a planned permanent living arrangement is in the best interest of the child, and (3) that one of three enumerated situations is present. The agency agrees that the only enumerated situation that might apply in this case is R.C.2151.343(A)(5)(b), which states:
 (b) The parents of the child have significant physical, mental, or psychological problems and are unable to care for the child because of those problems, adoption is not in the best interest of the child, as determined in accordance with division (D) of section 2151.414 [2151.41.4] of the Revised Code, and the child retains a significant and positive relationship with a parent or relative.
The parents' continuing battles against drug and alcohol qualify as a medical condition that renders them unable to care for the children. Yet despite these battles, the court could view the parents' adherence to the case plan and their success at substance abuse treatment as demonstrating an appropriate desire to retain the children.
We have not discouraged the courts from ordering a planned permanent living arrangement as a middle ground in cases where the court may not wish to sever parental rights, but believes that immediate reunification is unwarranted. See In re Campbell (Oct. 12, 2000), Cuyahoga App. No. 77552 and 77603, unreported. Given the evidence that the parents had taken steps to remedy the conditions that caused the children to be removed, but that the children were doing well with their foster parents in a time of emotional recovery from past exposure to the parents' destructive behavior, it seems to us that the court made a sensible decision to continue the status quo by placing the boys in a long-term planned parenting arrangement. The agency's cross-assignments of error are overruled.
Judgment affirmed.
Costs assessed against appellee/cross-appellant.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court Juvenile Court Division to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES D. SWEENEY, P.J., and TERRENCE O'DONNELL, J., CONCUR.