JOURNAL ENTRY and OPINION
The juvenile division of the court of common pleas terminated the mother Vanessa Anderson's parental rights to two of her five children: a boy age eight, and a girl age seven. In this appeal, the mother complains the court abused its discretion by finding that it was in the best interests of the children to be placed with the Cuyahoga County Department of Children and Family Services (the agency).
The children were removed from the mother's home at her request in 1997. The mother discovered that her former husband (who is not a party to this appeal) committed acts of sexual abuse against one of her older daughters, and that older daughter in turn sexually abused the girl. The girl began acting out sexually with the boy. The agency apparently became involved at that point and the mother, who was overwhelmed by these revelations, asked the agency to take the children on a temporary basis. The children were placed with a maternal aunt and the mother took parenting classes as a step for reunification.
The children remained with the maternal aunt until April 1999. The aunt told the agency to remove the children because the girl had been sexually abusing the boy, and she feared for the safety of her own child. The children were placed into different foster homes. The agency filed a complaint for permanent custody at that time, but failed to obtain necessary service and refiled the complaint in July 1999.
The complaint alleged that the children were dependent as defined in R.C. 2151.04(C) and could not be reunited with the mother in a reasonable time because of severe behavioral problems. The complaint further alleged that the mother had failed to remedy the conditions which caused the children to be placed outside the home, that the mother had failed to visit, communicate or support the children, and that reasonable efforts had been made to prevent the removal of the children.
The agency adopted a case plan with four objectives for the mother to complete. This included a substance abuse assessment (the mother admitted marijuana use), parenting classes, obtaining accommodations large enough for the children, and receiving counseling for family conflict and abuse. The case plan called for these objectives to be completed by August 2000. Despite these goals, the case plan's ultimate objective for the children was adoption not their reunification with the mother.
In January 2000, the mother appeared with counsel before the court and admitted for purposes of adjudication the allegation that the children were neglected. The mother asked that the matter be set for disposition.
The court conducted a hearing on the dispositional phase of the proceedings in April 2000. It then ruled that it would be in the best interests of the children to have permanent custody vested with the agency. The court found that the children could not be placed with the mother because she had failed continuously to remedy the conditions that required their removal from her home; that the mother had failed or refused to provide basic necessities, regular support, visit or communicate with the children when able to do so; and had otherwise shown an unwillingness to provide an adequate home for the children.
 I
The mother first argues that the court did not have clear and convincing evidence to show that the children were neglected. At the dispositional proceeding the mother, with the aid of counsel, admitted the children were neglected for purposes of adjudication. See January 19, 2000 Transcript at 1. She now maintains she entered this admission solely because she had been feeling overwhelmed, that those conditions that overwhelmed her have been rectified, and that she should not be penalized for recognizing her own shortcomings.
The flaw with the mother's argument is that she admitted the children were neglected in January 2000, nearly four years after the point at which she became overwhelmed and asked that they be removed. Given that four years had gone by, we do not believe that her admission of neglect, made with a request that the court proceed to disposition, could be said to have been made under the same duress that forced her to ask that the children be removed. Under the circumstances, we deem the mother's admission to have been knowingly and voluntarily entered, and that this admission of neglect waives her right to challenge the evidentiary sufficiency of that admission. See In re Cruz (Nov. 30, 2000), Cuyahoga App. No. 76863, unreported.
 II
The mother's primary argument is that the court lacked clear and convincing evidence to show that granting permanent custody of the children to the agency would be in the best interests of the children. The mother maintains that she has substantially remedied the conditions that caused the children to be removed from the home and that she has shown a willingness to provide a permanent home for the children.
Before the court may terminate parental rights to a natural child who is neither abandoned nor orphaned and commit that child to the permanent custody of the agency, it must first determine that the child cannot be placed with one of the parents within a reasonable time or should not be placed with either parent and that permanent custody is in the best interest of the child. See R.C. 2151.414(B). The factors the court must consider when making a determination of the child's best interests are contained in R.C. 2151.414(D). The factors the court must consider when making a determination of whether a child can be placed with either parent in a reasonable period of time are contained in R.C. 2151.414(E). The party seeking permanent custody of a child always bears the burden of establishing its allegations by clear and convincing evidence. R.C.2151.414(B). As a reviewing court, we cannot overturn the court's decision to grant permanent custody if that decision is supported by competent, credible evidence. In re Brofford (1992), 83 Ohio App.3d 869,876; In re Brown (1994), 98 Ohio App.3d 337, 342.
The court found that the mother had failed continuously and repeatedly to substantially remedy the conditions causing the children to be removed from the home. The court also found that the mother had failed or refused to provide basic necessities, regular support, visit, or communicate with the children when able to do so, or by other actions had shown an unwillingness to provide a permanent home for the children. These findings correspond to R.C. 2151.414(E)(1) and (4):
 In determining * * * whether a child cannot be placed with either of his parents within a reasonable period of time or should not be placed with his parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence * * * that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either of his parents within a reasonable time or should not be placed with either parent.
 (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home.
* * *
 (4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child; * * *.
The issue whether the mother remedied the conditions that caused the children to be removed from the home concerns completion of the case plan. When the court makes a dispositional finding of neglect, it must journalize a case plan. See R.C. 2151.353(D). R.C. 2151.412(F)(2) states the goals of a case plan adopted for children in temporary custody are:
 (a) Consistent with the best interest and special needs of the child, to achieve an out-of-home placement in the least restrictive, most family-like setting available and in close proximity to the home from which the child was removed or the home in which the child will be permanently placed;
(b) To do either of the following:
 (i) With all due speed eliminate the need for the out-of-home placement so that the child can return home;
 (ii) If return to the child's home is not imminent and desirable, develop and implement an alternative living arrangement for the child.
As a prerequisite for granting permanent custody in cases where a parent is accused of failing to remedy the reasons justifying a child's removal from the home, the court must consider whether the agency made reasonable case planning and diligent efforts to assist the parents to remedy the problems that caused the children to be removed. See R.C.2151.414(E)(1).
We find the agency did not engage in reasonable case planning to remedy the problems that caused the children to be removed. The case plan implemented in this case required the mother to receive counseling, take parenting classes, find a larger home, and complete substance abuse training. The case plan called for its terms to be completed by August 2000. One would think these objectives were intended with a goal of eliminating the need for an out-of-home placement, but the agency had no intention of seeking reunification. At trial, the social worker responsible for this case bluntly testified that permanent custody was always the agency's goal in the case: I was up front from the very beginning that I was always going to pursue the permanent custody.
We do not view the agency's position on the case plan as suggesting that the mother's attempts to comply with the case plan would be an exercise in futility. The agency had been involved with providing services to this family for over three years by the time it filed its motion for permanent custody. It was well-aware of the children's problems and the mother's past history of showing an unwillingness to parent. Taken in that context, it is apparent that the agency was justified in viewing permanent custody as a goal. Nothing in the mother's past history of parenting suggested that she would be able to meet the needs of these children, particularly when she abandoned them after the aunt asked that they be removed. The social worker testified that the mother made minimal compliance with the case plan. At the time of trial, the mother had completed drug rehabilitation and had not engaged in any further marijuana use, but she did not complete the aftercare portion of drug treatment. She completed parenting classes in 1996, but had not taken any other classes. The case plan called for the mother to engage in counseling, but she did not engage in formal counseling, choosing instead to receive informal sessions from her drug treatment counselor. The mother delayed contacting one counselor, without reason, to the point where those counseling sessions were terminated by the provider. The mother had not taken out a lease on a larger apartment because she did not want to engage in the expense of leasing a new apartment until she knew whether custody would be restored.
The court could reasonably find that not all objectives of the case plan had been completed to the point where the mother could show substantial compliance. It is true that the case plan gave the mother until August 2000 to complete its objectives, but the mother herself pushed forward with the April 2000 hearing, going so far as to admit she neglected the children so that the court could proceed to disposition. Having done so, she forfeited her right to ask the court to postpone the hearing so that she could complete the case plan. This is not a case where the agency failed to give the mother a meaningful opportunity to correct matters.
Even were we to find the agency made reasonable and diligent efforts to assist the mother in rectifying the conditions that caused the children to be removed, we would have to consider the court's finding that the mother failed or refused to provide basic necessities, regular support, visit, or communicate with the children when able to do so, or by other actions had shown an unwillingness to provide a permanent home for the children.
When a complaint lists a factor other than R.C. 2151.414(E)(1), an obligation to create a case plan does not arise. See In re Ryan (Aug. 20, 1999), Lucas App. No. L-98-1258, unreported. Because the agency's complaint also alleged grounds for permanent custody under R.C.2151.414(E)(4) that the mother had failed or refused to provide basic necessities, regular support, visit, or communicate with the children when able to do so, or by other actions had shown an unwillingness to provide a permanent home for the children no case plan was necessary.
Turning to the consideration whether permanent custody would be in the child's best interests under R.C. 2151.414(D), we find the court heard competent, credible evidence showing the children's need for a legally secure permanent placement that could only be achieved by a grant of permanent custody with the agency.
Beginning with the boy, the court heard testimony that the boy's younger sister had been perpetrating acts of sexual abuse upon the boy. This caused the siblings to be separated for foster care. The boy's therapist said the boy was mildly retarded and exhibited bizarre behavior at times. The boy's program coordinator confirmed the therapist's reports of bizarre behavior, saying that some of his teachers had noticed the boy on his hands and knees sniffing the school's commodes. The teachers also noted the boy engaged in behavior that centered around the body. The program coordinator said that the boy had been doing poorly in school and was probably in the wrong educational placement. She also testified that the boy had not mastered the basic concepts of personal space or refusing to go off with strangers. The program director thought it would be detrimental for the boy to leave foster care, and the therapist said the boy did not really understand who was his mother. The therapist said it was possible that the mother could care for the boy.
The girl likewise exhibited disturbing conduct, prompting the aunt to ask that the children be removed. Like her brother, she is mildly retarded. She has been diagnosed with Attention Deficient Hyperactive Disorder. She is disruptive in school and very immature for her age, having difficulty playing with children her age. The girl and the boy do not get along well they become wild when together and cannot be disciplined. The girl's therapist said that the girl's foster mother, who has expressed an interest in adopting the girl, had helped the girl make progress. The girl's therapist thought it would be very traumatic for the girl to return to her mother, and gave the dire prediction that if that were to happen, the girl was probably going to become a teenage pregnant girl with four kids, recreate all the abuse that she has had.
What emerges is a picture of two deeply disturbed, mildly retarded children with early exposure to sexual abuse. Both children will require substantial counseling in the future. Most of the witnesses thought the children could not be reunified in the same household, and none of them expressed the opinion that reunification with the mother would be in their best interests. We view this as competent, credible evidence that the children had the need for a legally secure placement and such a placement could not be accomplished without granting permanent custody to the agency.
Our next consideration is the R.C. 2151.414(E)(4) factor concerning whether the mother had demonstrated a lack of commitment by failing regularly to support, visit or communicate with the child when able to do so, or by other actions show an unwillingness to provide an adequate permanent home for the children.
The court heard competent, credible evidence to support its finding that the mother failed to support, visit or communicate with the children.
The court found that the mother failed to provide basic necessities, regular support, visit or communicate with the children. There is no evidence in the record to show that the mother provided any kind of financial support for the children, nor did she provide them with basic necessities.
As for her visitation or communication with the children, the mother testified that she voluntarily asked for the children to be removed from her house after being overwhelmed by the abuse allegations against her former husband. The children were placed with a maternal aunt for three years and the mother said that she visited the children two to three times a week. Despite this visitation, the evidence showed that neither child considered the mother to be a parent. Some witnesses questioned whether the children knew who their mother was; for example, the girl variously referred to the mother as either Miss Vanessa or mommy, while the boy was said to have no understanding whether the mother or the aunt was his real mother. The children's confusion was understandable. By the time of trial, the mother had not been a meaningful part of their lives for over four years.
When the aunt asked the agency to take the children back, the mother purposely did not contact either the aunt or the agency for three months because she was angry with the aunt for giving up on the children. It was not until the children were placed in foster homes and the agency filed for permanent custody that she tried to make contact with the children. This failure was grievious under the circumstances. At a time when the children most needed the mother to take custody, they were placed in custodial limbo. The courts have viewed similar lapses of visitation or communication as being sufficiently lengthy to show a failure to visit or communicate. See, e.g., In re Thompson (Jan. 10, 2001), Summit App. No. 20201, unreported (juvenile court reasonably concluded that the father's unexplained failure to visit or communicate with his children for four months demonstrated a lack of commitment).
It was not until the agency filed its motion for permanent custody that the mother's attempt to comply with the case plan began in earnest. One element of the case plan called for the mother to take a parenting class. She received an information letter about an available course in October 1999, but took no action to sign up for the class. She likewise ignored a second letter sent in December 1999. The mother did not sign up for the parenting class until February 2000, just two months before the hearing. She attended two sessions, but then learned the class had been canceled. At the time of the hearing, the mother said she enrolled in another parenting class just days before she took the witness stand.
Indeed, most of the mother's attempts to comply with the case plan came not from voluntary action, but because the agency forced her hand by filing the motion for permanent custody. The mother did not begin visiting the children until the agency filed its motion for permanent custody. She did not begin parenting classes until the eve of trial.
Taken in the aggregate, the mother's failure to support her children for three years while they resided with the aunt and for the three month period after the aunt asked that the children be removed, constituted a period of substantial failure to visit or communicate with the children.
The court could reasonably view the mother's after-the-fact attempts at conforming to her role as a parent as falling short of demonstrating the type of commitment necessary to overcome the agency's compelling evidence that it would be in the children's best interest to have permanent custody placed with the agency. The court heard substantial evidence to show that the children could not safely be placed together in a home. Both children have considerable emotional problems that will require special attention attention that the mother is not currently able to provide.
We are aware that the children's guardian ad litem gave her opinion that the mother should be given the chance to conform to the case plan, but we find the court did not abuse its discretion by refusing to adopt that recommendation. For these children, the adoption window of opportunity is very small. Their best chance of being placed in adoption is now, and even the guardian ad litem conceded that the mother could not take the children now. She merely held out the hope that she might be able to provide a home for them at some point in the future. It would not serve the best interests of the children to put their lives on hold while the court waited to see if the mother could demonstrate the ability to be a parent particularly when her past history suggested that any wait would be futile. The assignments of error are overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court Juvenile Court Division to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 ____________________ MICHAEL J. CORRIGAN, J.:
KENNETH A. ROCCO, P.J., and JAMES D. SWEENEY, J., CONCUR.