OPINION
This appeal is taken from a final judgment of the Juvenile Division of the Geauga County Court of Common Pleas. Appellant, Kathleen M. Kovach, appeals from the trial court's judgment terminating her parental rights and granting permanent custody of her minor son, Edward Litz ("Edward"), to appellee, Geauga County Job and Family Services ("GCJFS").
The following facts are relevant to this appeal. On March 5, 1998, GCJFS filed a complaint alleging that Edward and his sister Amanda were dependent children. Specifically, GCJFS claimed that Edward suffered from encopresis (frequent and uncontrolled soiling of trousers), attention-deficit hyperactivity disorder, intermittent explosive disorder, and depression. The complaint also alleged that the children's parents, appellant and James Litz, had difficulties addressing Edward's situation, that they may have their own psychological issues, and that there were concerns of domestic violence within the home.
An adjudicatory hearing was conducted on May 5, 1998, during which time appellant and James Litz entered a plea of "true" to an amended complaint. As a result, the trial court found that Edward and his sister were dependent children.[1] GCJFS then developed a case plan that called for, among other things, all family members to receive appropriate psychological counseling.
On July 15, 1998, the trial court issued a judgment entry granting GCJFS temporary custody of Edward. A dispositional hearing was conducted on August 3 and 4, 1998. After considering the evidence, the trial court determined that it was in Edward's best interest to remain in the temporary custody of GCJFS. In addition, the court also concluded that Amanda should also be taken into temporary custody at that time.[2]
The trial court subsequently conducted review hearings in March 1999, September 1999, February 2000, and August 2000. During the August 11, 2000 review hearing, the court found that while Edward was making significant progress with his behavioral problems, appellant had not been consistent in participating in Edward's treatment. Moreover, appellant had regressed in all areas of her case plan, and had demonstrated a lack of commitment toward achieving the objectives set forth therein.
Another review hearing was held in February 2001. After considering the evidence presented, the trial court again found that Edward had made significant progress in addressing his behavioral problems. However, appellant had failed to participate in counseling on a regular basis, and there was no evidence that she had made any progress in addressing the personal issues that prevented her from being able to provide a stable and nurturing environment for her son. Appellant was by then separated from James Litz and living in housing provided by Ravenwood Mental Health Center Adult Case Management Services ("RMHC"). Furthermore, appellant was unable to maintain steady employment and had been inconsistent with paying her child support obligation.
Based on this evidence, the trial court concluded that neither parent was able to provide for Edward's physical and emotional needs. As a result, because Edward had been in the custody of GCJFS for nearly three years, the court directed GCJFS to begin identifying alternate permanent placement options.
In accordance with the trial court's order, GCJFS filed a motion for permanent custody of Edward on March 26, 2001. A permanent custody hearing was then held on May 23, 2001, during which time the following witnesses testified on behalf of GCJFS: (1) Jennifer Turk, an outpatient therapist in RMHC's sexual abuse program; (2) Wendy Oosting, an adult case manager at RMHC; (3) Lisa Ruman, a psychotherapist at Churchill Counseling, and program coordinator for the "Home for Kids" sexual trauma recovery program; (4) Cheryl Breedlove, RMHC's medical records custodian; (5) Brian Joseph McCann, a therapist and clinical consultant at Beech Brook; (6) Dr. Steven Neuhaus, a psychologist for University Hospitals Health System, Laurelwood Hospital and Counseling Centers; (7) Elisa Gagliardi, a therapist and outpatient coordinator for RMHC; (8) Pamela Couch, Edward's foster parent; (9) Lauri DeRue, a family preservation worker providing in-home family services for Beech Brook; (10) Mary Ann Brown, Edward's guardian ad litem from March 1998 to May 2000; (11) Roxanne Griffin, an employee with GCJFS's child support enforcement division; (12) Mark Malliski, appellant's former landlord at Deer Lake Mobile Park; (13) Endre Toth, a GCJFS social worker; and, (14) Ann Bagley, the supervisor of GCJFS's permanency planning team.
For purposes of this opinion, we will only highlight those portions of the testimony relevant to the trial court's finding that Edward could not be placed with appellant within a reasonable time or should not be placed with her. The evidence presented showed that Edward had been diagnosed with oppositional defiant disorder, chronic post-traumatic stress disorder, chronic reactive attachment disorder, and depression. Moreover, when the family unit was intact, Edward was both physically and sexually abused, neglected, and exposed to inappropriate sexual activity and material. It was also testified to that during the time Edward was under appellant's care, she did a poor job of meeting his hygienic needs. As a result of his family environment, Edward was determined to be an emotionally disturbed child.
In March 1998, a case plan was established for appellant, and after two years, none of the goals had been fully achieved. In March 2000, after two years in temporary custody, Edward was placed in a planned permanent living arrangement. However, reunification remained the goal of the case plan, and the plan was streamlined to facilitate this objective.
Over the next six months, however, appellant "dropped off the face of the earth" with respect to her case plan. Testimony showed that appellant still had personal, medical, employment, and home related problems which created an unstable living situation which interfered with her ability to focus on Edward's special needs and care.
Appellant had also demonstrated an inability to follow through on parenting skills and provide Edward with necessary structure. She missed numerous scheduled appointments and classes. Appellant also had little insight into Edward's problems or into what steps she needed to take to address them. Her persistent inconsistency in attending family therapy set back Edward's progress and caused him anxiety.
The testimony also showed that before appellant was evicted from her trailer June 2000, she was constantly drinking, having parties, and playing her stereo too loudly, which resulted in frequent police visits. Furthermore, appellant did not comply with case plan goals directed at addressing her abuse of drugs and alcohol.
While Edward was in the temporary custody of GCJFS, appellant was obligated to pay child support in the amount of $58 per month. However, after September 1999, she made less than half of the payments. In addition, at the time of the hearing, appellant lived in RMHC housing that could not accommodate Edward. She also did not have the resources or the ability to care for Edward at that time. Appellant stated herself at the hearing that she was unable to take Edward back.
Edward, on the other hand, had adjusted well to his foster home environment and had improved his mental and emotional health. Edward's encopretic episodes, which initially occurred on a daily basis, now occurred approximately once a month. The opinion was also expressed that Edward was not ready to return home because he required structure and consistency, which appellant was unable to provide for the foreseeable future.
After the permanent custody hearing, the trial court issued its judgment in which it found, by clear and convincing evidence, that it was in the best interest of the child to grant permanent custody of Edward to GCJFS. From this judgment, appellant timely filed a notice of appeal asserting the following assignments of error:
 "[1.] The trial court erred to the prejudice ao [sic] defendant-appellant in finding that the Geauga County Job Family Services employed reasonable case planning and diligent efforts to implement the reunification plan.
 "[2.] The trial court erred in its determination that permanent custody is in the best interest of the minor child.
 "[3.] The trial court erred when it failed to appoint an attorney as guardian ad litem for the minor children or an attorney to represent the interests of the children in addition to the guardian ad litem.
 "[4.] The juvenile court's finding that the minor child cannot be placed with defendant-appellant within a reasonable length of time was against the manifest weight of the evidence."
 For organizational purposes, we will consider appellant's second assignment of error first. In her second assigned error, appellant argues that the trial court erred in concluding that permanent custody was in the best interests of the child. Specifically, appellant maintains that the trial court failed to consider all of the mandatory factors listed in R.C. 2151.414(D) before making its decision.
R.C. 2151.414 sets forth the guidelines that a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates that the trial court must schedule a hearing and provide notice upon filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.
Following the hearing on the motion, R.C. 2151.414(B) authorizes the trial court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody to the agency and that any of the following apply: (1) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (2) the child is abandoned and the parents cannot be located; or (3) the child is orphaned and there are no relatives of the child who are able to take permanent custody.
Therefore, R.C. 2151.414(B) establishes a two-pronged analysis that the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually adjudge whether one of the three circumstances delineated in R.C. 2151.414(B)(1) through (3) is presented before proceeding to a determination regarding the best interest of the child.
If the child is not abandoned or orphaned, then the focus turns to whether the child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. Under R.C.2151.414(E), the trial court must consider all relevant evidence before making this determination. The trial court is required to enter such a finding if it determines, by clear and convincing evidence, that one or more of the conditions enumerated in R.C. 2151.414(E)(1) through (12) exist with respect to each of the child's parents.
Assuming the juvenile court ascertains that one of the three circumstances listed in R.C. 2151.414(B)(1) through (3) is presented, then the court proceeds to an analysis of the child's best interest. In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) mandates that the trial court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; and (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency.
The trial court may terminate the rights of a natural parent and grant permanent custody of the child to the moving party only if it determines, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody to the agency that filed the motion and that one of the three circumstances delineated in R.C. 2151.414(B)(1) through (3) is presented. Clear and convincing evidence is more than a mere preponderance of the evidence. Instead, it is evidence sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. In re Holcomb (1985),18 Ohio St.3d 361, 368; Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus. An appellate court will not reverse a trial court's termination of parental rights and award of permanent custody to an agency if the judgment is supported by clear and convincing evidence. In re Taylor (June 11, 1999), Ashtabula App. No. 97-A-0046, unreported, 1999 WL 417995, at 3. See, also, In re Frary (Dec. 17, 1999), Geauga App. No. 98-G-2132, unreported, 1999 WL 1313623, at 4.
In its judgment entry, the trial court made the initial determination under R.C. 2151.414(B)(1) that Edward was neither abandoned nor orphaned, but that he could not be placed with either parent within a reasonable time or should not be placed with the parents. The court then proceeded to the second prong of the statutory analysis, to wit; a determination that it was in the best interest of the child to grant permanent custody to GCJFS. In doing so, the trial court indicated that it had considered the factors in R.C. 2151.414(D).
This court has held on numerous occasions that the provisions of R.C.2151.414(D) are mandatory and "must be scrupulously observed." In reHommes (Dec. 6, 1996), Ashtabula App. No. 96-A-0017, unreported, 1996 Ohio App. LEXIS 5515, at 4. See, also, In re Jacobs (Aug. 25, 2000), Geauga App. No. 99-G-2231, unreported, 2000 WL 1227296, at 5. Thus, the failure to discuss each of the factors set forth in R.C. 2151.414(D) when reaching a determination concerning the best interest of the child is prejudicial error. Jacobs at 5. There must be some indication on the record that the trial court considered all four factors found in R.C.2151.414(D) when reaching its judgment. Jacobs at 5. Moreover, no factor is solely dispositive of the issue, and each needs to be given proper consideration. Id. at 5; Hommes at 6.
A review of the June 1, 2001 judgment entry shows that the trial court fully complied with R.C. 2151.414(D). Though not always directly, the judgment entry does indicate that each of these factors was considered. As a result, we cannot say that the trial court abused its discretion, or failed to consider the mandatory statutory factors. Appellant's second assignment of error is not well-taken.
In assignment of error one, appellant contends that GCJFS failed to employ reasonable case planning and make diligent efforts in implementing a reunification plan. Secondly, she contends that the trial court's judgment entry is deficient for failing to make adequate findings of fact in accordance with R.C. 2151.419(B).
GCJFS was required to exercise reasonable case planning and to make diligent efforts to remedy the problems that initially caused the removal of the child from the home, with the ultimate goal of reuniting the family. R.C. 2151.419(A); In re Brown (1994), 98 Ohio App.3d 337. At a permanent custody hearing, the agency seeking custody has the burden of proving it made those efforts. R.C. 2151.419(A). If the trial court makes a determination that these efforts were properly made, under R.C.2151.419(B)(1), the court is required in its written finding of facts to "briefly describe * * * the relevant services provided by the agency to the family of the child and why those services did not * * * enable the child to return safely home."
Contrary to appellant's argument, the record supports the trial court's finding that GCJFS employed reasonable case planning and made diligent efforts in implementing a reunification plan. Furthermore, the findings stated in the judgment entry were sufficient to satisfy the requirements of R.C. 2151.419(B).
Three mental health professionals were provided to work with Edward on his issues, and at least five professionals, plus a caseworker, worked with appellant on hers. The problems were identified and counseling and other services were provided to resolve them. While her counselor's may have changed over the three years GCJFS managed the case plan, and while this may have created a certain lack of continuity, the goals set forth in the case plan remained consistent and were in fact relaxed after two years in an attempt to make it easier for appellant to meet them. It was incumbent upon appellant to fully utilize these services, and it is evident from the record that she did not.
In spite of her early shortcomings and failures to utilize services, the record indicates that the appropriate and necessary services were continuously made available throughout the three years, with the exception of one two-month period during which time a personal therapist was not assigned to her case. Thus, appellant's failure to satisfy the objectives of the case plan is clearly attributable to her own behavior and not to any lack of effort on the part of GCJFS.
With respect to the form of the judgment entry itself, the trial court stated in its entry the following:
 "The Court * * * finds by clear and convincing evidence that following the placement of the minor child, Edward Litz, outside the child's home and not withstanding [sic] reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside of the home, the child's mother, [appellant], has continually and repeatedly failed to substantially remedy the conditions causing the child to be placed outside the child's home. The Court finds specifically that the child's mother has failed to consistently use psychiatric, psychological, and counseling services made available to her and that to the extent she has used these services, they have been ineffective in addressing her inability to parent the minor child, Edward Litz.
 "The Court further finds by clear and convincing evidence that [appellant] suffers chronic emotional illness and physical disabilities that make her unable to provide an adequate permanent home for the minor child, Edward Litz, at the present time. The Court finds it unlikely that she could adequately address these issues within one year of the date of this hearing. * * * [Appellant] lacks the ability to provide the structured, nurturing environment this child needs to thrive."
 R.C. 2151.419(B) only requires that the trial court briefly describe the services provided, and why they were of no avail. Here, the court found that psychiatric, psychological, and counseling services were provided, and that appellant failed to adequately utilize them, and to the extent she did, they were unsuccessful in resolving the deficiencies in her parenting skills. The trial court found that appellant suffers from chronic emotional illness, which, among other factors, made a return of the child to the home inappropriate. While it would have been preferable for the court to further expand on its findings, they were sufficient to meet the requirement of "briefly" describing the services, and why they did not work. As a result, appellant's first assignment of error is without merit.
In her third assignment of error, appellant contends that the trial court erred when it failed to appoint an attorney as guardian ad litem, or in the alternative, an attorney to represent the interests of the child in addition to the guardian ad litem. Appellant believes that the appointment of an attorney would assure that a child's constitutionally guaranteed rights to due process are adequately protected during custody proceedings. We disagree.
First, the record clearly shows that the trial court did exactly what appellant argues it should have done. On September 21, 1998, the court issued the following judgment entry:
 "This matter came on for consideration of the request received by the guardian ad litem * * * that she be appointed counsel to represent her in these proceedings. The Court finds said request to be well taken. The Court appoints Mark J. Hassett as counsel for the guardian ad litem."
 The record also shows that the appointed attorney filed briefs and motions on behalf of the guardian ad litem, and otherwise assisted with protecting Edward's best interests.
However, even if the trial court had not appointed an attorney to assist the guardian ad litem, that decision would rest within the sound discretion of the trial court, and would not be overturned on appeal absent an abuse of that discretion. R.C. 2151.281(H); In re Bailey (July 20, 2001), Geauga App. No. 2001-G-2337, unreported, 2001 Ohio App. LEXIS 3294, at 16. Moreover, both Juv.R. 4(C) and R.C. 2151.281(H) contemplate the appointment of an individual who is not an attorney as guardian adlitem for an alleged abused, neglected, and/or dependent child. Bailey at 16; Byram v. Lucas Cty. Children Services Bd. (Nov. 22, 1991), Lucas App. No. L-91-179, unreported, 1991 WL 251966. Accordingly, appellant's third assignment of error has no merit.[3]
In appellant's fourth and final assignment of error, she maintains that the trial court's finding that Edward could not be placed in her custody within a reasonable amount of time was against the manifest weight of the evidence. Appellant argues that under the circumstances, she made reasonable efforts to comply with the case plan, and that if she had the continued support of a social worker, along with additional time to complete counseling, she could still be a parent to her child.
In addressing the question of whether the child can be placed with either of its parents within a reasonable amount of time under R.C.2151.414(E), the court must consider all relevant evidence before making this determination. Jacobs at 4. The trial court is required to enter such a finding if it determines, by clear and convincing evidence, that one or more of the conditions enumerated in R.C. 2151.414(E)(1) through (12) exist with respect to each of the child's parents. Jacobs at 4.
R.C. 2151.414(E) states in relevant part:
"* * *
 "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
"* * *"
 In the case at bar, the trial court made the required findings under R.C. 2151.414(E)(1) that mandated the conclusion that Edward could not be returned to appellant within a reasonable amount of time. Appellant had three years to attain the goals set forth in her case plan. While she did make progress on some of the goals in the first two years, in the third year she regressed to a point where things were getting worse rather than better. In fact, appellant had not fully achieved any of her goals and had little insight into Edward's problems and what she needed to do to address these issues.
Therefore, we conclude that there was clear and convincing evidence underlying the trial court's determination under R.C. 2151.414(E). As a result, the trial court's judgment was not against the manifest weight of the evidence. Appellant's fourth assignment of error is meritless.
Based on the foregoing analysis, appellant's four assignments of error are not well-taken. Accordingly, the judgment of the trial court granting GCJFS permanent custody of Edward is affirmed.
JUDGE JUDITH A. CHRISTLEY, O'NEILL, P.J., dissents, GRENDELL, J., concurs.
[1] On March 29, 2001, James Litz executed a document surrendering his parental rights to GCFJS. He is not part of the appeal currently before this court.
[2] Amanda was ultimately placed in the custody of her maternal grandparents.
[3] Although the issue was neither raised in the appellate briefing nor necessary for the disposition of appellant's third assignment of error, we would note that there may be a question with respect to whether a parent even has standing to raise on behalf of a child the appointment of an attorney to assist a guardian ad litem.