[Cite as *In re Cr.V.*, 2021-Ohio-762.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

In re Cr.V., Ca.V., A.V.

Court of Appeals No. L-20-1136

Trial Court No. JC 18270575

**DECISION AND JUDGMENT**

Decided: March 12, 2021

* * * * *

Adam H. Houser, for appellant.

David T. Rudebock, for appellee.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} This is an appeal from the judgment of the Lucas County Court of Common

Pleas, Juvenile Division, which awarded permanent custody of the minor children, Cr.V.,

Ca.V., and A.V., to appellee, Lucas County Children Services ("LCCS"), thereby

terminating the parental rights of father-appellant, K.V.[1]  For the reasons that follow, we affirm.

## I.  Facts and Procedural Background

{¶ 2} The present case began on September 14, 2018, when LCCS filed a complaint in dependency and neglect.  The complaint alleged that in May 2018, Cr.V. was present in paternal grandmother's home when an adult overdosed.  Father reported then that he was living in paternal grandmother's home with his two sisters and their boyfriends.  Father reported that one of the boyfriends overdosed on heroin, and one of his sisters was also using heroin.  Father admitted that he, himself, smoked marijuana and had a past issue with heroin, but that he was engaged with substance abuse treatment.  At that time, father and mother, G.H., agreed that the children would reside with mother.  Mother also had a history of heroin abuse.

{¶ 3} On September 11, 2018, father reported that mother and the children had been residing with him at paternal grandmother's house for the past few weeks.  However, mother had left in the middle of the night, and father could not locate her.  At the family case conference two days later, father reported that he last used marijuana three weeks earlier, and last used heroin on June 6, 2018.  Father admitted that he was arrested on August 21, 2018, for violating the conditions of his bond by testing positive

---

[1] Mother, G.H., is not a party to this appeal, so the facts and issues will be addressed only as they pertain to father.

for illicit substances. Records from father's treatment center showed that he also tested positive for fentanyl and marijuana on September 5, 2018.

{¶ 4} A shelter care hearing was held on September 14, 2018, at which the juvenile court awarded temporary custody of the children to LCCS. A case plan was developed with the goal of reunification. Under the case plan, father was referred for a mental health diagnostic assessment and a drug and alcohol diagnostic assessment, and was asked to comply with all recommendations resulting from the assessments.

{¶ 5} An adjudication hearing was held on October 31, 2018, at which the children were adjudicated dependent and neglected. Father failed to appear for the hearing because he was incarcerated in Ottawa County.

{¶ 6} On August 9, 2019, LCCS moved for permanent custody of the three children. The permanent custody motion was ultimately heard on June 24, 2020.[2]

{¶ 7} At the June 24, 2020 hearing, Nykell Flowers, the ongoing caseworker for LCCS, testified that father was referred for mental health and substance abuse assessments, and that he was recommended for an intensive outpatient program for his substance abuse issues. Father has been receiving those services through Bayshore Counseling in Port Clinton, Ohio, but he has not successfully completed those services during the pendency of the case. Flowers testified that father was incarcerated for a time

---

[2] In the interim, the matter was continued for the purpose of consolidating the case with another case concerning the half-sibling of Cr.V., Ca.V., and A.V. Father is not the father of the half-sibling, and this appeal does not pertain to that child.

during the case for violating the terms of his probation by testing positive for illicit substances. His probation stemmed from a prior conviction for child endangerment. While incarcerated, father completed his intensive outpatient program. However, Flowers testified that following his release from prison in October 2019, father has been inconsistent with the aftercare portion of the program. Flowers testified that father did not participate in services in the month of February 2020 because he was ill, and the month of March 2020 because he was uncertain if services were still being offered due to COVID-19. Father reengaged with the bi-weekly services on April 24, 2020, but stopped communicating with his counselor on June 4, 2020.

{¶ 8} Regarding father's drug use, Flowers testified that father tested positive for codeine and morphine on March 1, 2019, and positive for cocaine and THC on April 12, 2019. In addition, father tested positive for cocaine and THC on January 29, 2020. Father has not been tested since that time. Father did inform Flowers that he is currently not using drugs, and has been clean for a few months.

{¶ 9} Flowers also testified regarding concerns with the home where father was residing. Flowers stated that father was living in the home where the individual overdosed in May 2018 while Cr.V. was present. Flowers spoke of ongoing concerns about drug activity in that home, and noted that the home was just raided by the police in December 2019. Flowers testified that father is currently facing felony drug charges in Ottawa County.

4.

**{¶ 10}** Finally, Flowers testified that father has been consistent in video visitations with the children under the COVID-19 procedures. Prior to COVID-19, father's in-person visitations were "hit or miss" due to transportation issues.

**{¶ 11}** Father then testified on his own behalf. Father testified that he loves his children, and that his children are a source of motivation for him to get his life in order. Father acknowledged that he has a substance abuse problem, but that he is working on it, and that he began working on it even before his children were taken from the home. Father testified that he smoked marijuana a few months earlier, and that he last used cocaine in January 2020, but he has been clean and sober since then. Prior to his current sobriety, father testified that his longest period of sobriety in the previous two years was for seven months between April 18 and October 18, 2019. Yet, he acknowledged that he was incarcerated for more than five months of that time.

**{¶ 12}** Father testified that he is currently residing with his mother. Father admitted that the home had been raided for drugs twice in the past year. However, father testified that his sister has since been kicked out of the home, and that his mother provides him tremendous support. In addition, father testified that his other sister is a good role model and provides him with peer support. Father testified that he believed he could support and care for his children, and that he was in a position to be able to take custody of them immediately.

**{¶ 13}** The final witness to testify was Andrea Rentner, the guardian ad litem. Rentner testified that it was her recommendation that permanent custody of the children

5.

be awarded to LCCS. Rentner stated that father has visited the children and is bonded with them, and it saddens her that he has not been motivated enough to complete his services and rectify his substance abuse issues. Rentner testified that during the visits, father was very loving and very interactive with the children. Rentner had planned to visit father's home at the end of 2019 because it appeared that he was making some progress, but then the home was raided again in December 2019. Rentner also testified that the children are doing great in their placement with the foster parents.

{¶ 14} After the conclusion of the witness testimony, the trial court took a brief recess to consider the documentary evidence, including father's records from Bayshore Counseling. The court noted that less than two months following his release from incarceration, father tested positive for cocaine on November 26, 2019. Then, on December 10, 2019, father reported to his counselor that he allowed some potential drug users to move in with him. Not long after that, father tested positive for cocaine and THC on January 28, 2020, as testified to earlier. Additionally, on May 1, 2020, less than two months before the permanent custody hearing, father reported to his counselor that he overdosed on heroin the day before because of the death of his grandmother and the news of his girlfriend leaving him. Finally, on May 21, 2020, father was indicted by the Ottawa County Grand Jury on four felony drug offenses, which were still pending at the time of the permanent custody hearing.

{¶ 15} In granting permanent custody of the children to LCCS, the court noted that the children have been in the temporary custody of LCCS since September 2018, and that

6.

father's recent overdose demonstrated to the court that he was not ready to be able to take care of his children. In its judgment entry following the hearing, the trial court found that the children could not be placed with father within a reasonable time, relying on R.C. 2151.414(E)(1) and (2). The court further found that awarding permanent custody of the children to LCCS was in the children's best interests.

## II. Assignments of Error

{¶ 16} Father has timely appealed the trial court's July 15, 2020 judgment, and now asserts one assignment of error for our review:

> 1. The trial court's decision was against the manifest weight of the evidence as it was not in the best interest of the child to grant permanent custody to Lucas County Children Services.

## III. Analysis

{¶ 17} In his assignment of error, father challenges the trial court's award of permanent custody of Cr.V., Ca.V., and A.V. to LCCS.

{¶ 18} In order to terminate parental rights and award permanent custody of a child to a public services agency under R.C. 2151.414, the juvenile court must find, by clear and convincing evidence, two things: (1) that one of the enumerated factors in R.C. 2151.414(B)(1)(a)-(e) apply, and (2) that permanent custody is in the best interests of the child. R.C. 2151.414(B)(1). Clear and convincing evidence is that which is sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph

7.

three of the syllabus. The clear and convincing standard requires more than a preponderance of the evidence, but it does not require proof beyond a reasonable doubt. *Id.*

{¶ 19} "A trial court's determination in a permanent custody case will not be reversed on appeal unless it is against the manifest weight of the evidence." *In re A.H.*, 6th Dist. Lucas No. L-11-1057, 2011-Ohio-4857, ¶ 11, citing *In re Andy-Jones*, 10th Dist. Franklin Nos. 03AP-1167, 03AP-1231, 2004-Ohio-3312, ¶ 28. We recognize that, as the trier of fact, the trial court is in the best position to weigh the evidence and evaluate the testimony. *Id.*, citing *In re Brown*, 98 Ohio App.3d 337, 342, 648 N.E.2d 576 (3d Dist.1994). Thus, "[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus.

{¶ 20} R.C. 2151.414(B)(1)(a) provides that a trial court may grant permanent custody of a child to the agency if it finds that, in addition to the placement being in the best interest of the child,

> The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, * * * and the child cannot be placed with either

of the child's parents within a reasonable time or should not be placed with

the child's parents.

R.C. 2151.414(E) requires a trial court to find that a child cannot be placed with either of

the child's parents within a reasonable time or should not be placed with either parent if

any of sixteen factors are met. Here, the trial court found that R.C. 2151.414(E)(1) and

(2) applied to father.

{¶ 21} Because only one factor is needed to support the trial court's conclusion

under R.C. 2151.414(B)(1)(a), we will begin and end our analysis with R.C.

2151.414(E)(1). Notably, father does not make any arguments relative to the specific

factors found by the trial court under R.C. 2151.414(E).

{¶ 22} The factor stated in R.C. 2151.414(E)(1) is

Following the placement of the child outside the child's home and

notwithstanding reasonable case planning and diligent efforts by the agency

to assist the parents to remedy the problems that initially caused the child to

be placed outside the home, the parent has failed continuously and

repeatedly to substantially remedy the conditions causing the child to be

placed outside the child's home. In determining whether the parents have

substantially remedied those conditions, the court shall consider parental

utilization of medical, psychiatric, psychological, and other social and

rehabilitative services and material resources that were made available to

9.

the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

{¶ 23} Here, the record demonstrates that despite father's consistent involvement in drug counseling and treatment, he continuously and repeatedly succumbs to substance abuse as evidenced by his positive tests for cocaine and marijuana, and his self-reported overdose on heroin less than two months before the permanent custody hearing. Therefore, we hold that the trial court's determination under R.C. 2151.414(E)(1) is not against the manifest weight of the evidence.

{¶ 24} Turning to whether permanent custody was in the best interests of the children, R.C. 2151.414(D)(1) provides several factors that the trial court must consider in making its determination, including:

> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

> (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

> (c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period * * *;

10.

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶ 25} In support of his assignment of error, father argues that he has been consistent in his visits with the children, and during those visits has been very attentive to, and involved with, his children. Father further argues that he has a stable home and is financially able to care for his children. Finally, father argues that he is a recovering addict who is in treatment for his drug issues. Thus, father concludes that the court's decision to award permanent custody is not in the best interests of the children and is against the manifest weight of the evidence. We disagree.

{¶ 26} In finding that permanent custody to LCCS was in the best interests of the children, the trial court noted that the children had spent a significant portion of their lives in foster care, as the oldest child was only four years old when he was removed from the home. The court recognized that the children needed to be in a safe, stable, and secure environment, and that such an environment could not be achieved without an award of permanent custody due to father's inability to alleviate his chronic substance abuse. Supporting the court's findings was father's persistent history of substance abuse, and the testimony of the guardian ad litem that the children were doing very well in their placement. In addition, the guardian ad litem's report stated that the children were very

11.

smart, and were excited about the upcoming summer where they would draw, learn to swim, and help the foster mom garden. Furthermore, the guardian ad litem had no concerns about the children's development. Therefore, we hold that the trial court's finding that awarding permanent custody of the children to LCCS was in the children's best interests is not against the manifest weight of the evidence.

{¶ 27} Accordingly, father's assignment of error is not well-taken.

## IV. Conclusion

{¶ 28} For the foregoing reasons, we find that substantial justice has been done the party complaining, and the judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Father is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

Gene A. Zmuda, P.J.

Myron C. Duhart, J.
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.

12.