OPINION
{¶ 1} Plaintiff-appellant, Stacy Lynn Gossard, appeals the October 20, 2004 judgment of the Court of Common Pleas, Juvenile Division, of Wyandot County, Ohio, adopting the decision of the magistrate and designating defendantappellee Brad E. Miller the residential parent of the parties' son, Chad Miller. By a previous judgment entry on September 23, 2004 the trial court had overruled Stacy's objections to the Magistrate's decision.
 {¶ 2} Brad and Stacy met while working together. They were both married when they met, but they entered into an adulterous relationship in 2001. After their relationship had begun, Stacy separated from her husband, Larry Gossard, and moved out of her marital residence in March 2001. Brad later separated with his wife, Teresa Miller, and moved into Stacy's residence in October 2001. Little more than a month later, Brad moved out. After that, Larry and Stacy attempted a reconciliation; Larry moved back in with her in December 2001 although they were finalizing their divorce at the same time.
 {¶ 3} Chad was born on May 18, 2002. Shortly thereafter, Brad and Stacy attempted to reconcile, and Stacy moved out to Nevada with Chad where Brad was then residing. Two months later, Stacy and Larry decided that they could work through their marital difficulties, and Stacy moved back to Upper Sandusky, Ohio to live with Larry. Although Stacy and Larry had previously had a son together, Brandon Gossard, the record is unclear as to who had custody of Brandon at this time. However, in June or July 2002, when Stacy moved back to Ohio, it is apparent that she and Larry were living together and had custody of both Brandon and Chad. Additionally, sometime during this period Brad and Teresa reconciled as well, and Brad moved back in with Teresa and their kids in Carey, Ohio.
 {¶ 4} On August 30, 2002 the Wyandot County Child Support Enforcement Agency (CSEA) filed a complaint seeking to establish a parent-child relationship. On November 19, 2002 the parties came to a mutual agreement and filed a consent judgment entry establishing that Brad is Chad's biological father and designating Stacy as Chad's temporary residential parent. On January 28, 2003 the magistrate filed his decision adopting the parties' stipulated agreement. The magistrate's decision designated Stacy as the residential parent, ordered Brad to pay child support, and granted standard visitation rights to Brad. The trial court adopted that decision in its February 2, 2003 judgment entry.
 {¶ 5} On December 16, 2003 Brad filed a motion to modify the allocation of parental rights and responsibilities. The court appointed a guardian ad litem (GAL) in response to a motion made by Brad, and the GAL filed a report with the trial court after investigation, recommending that Brad be named residential parent.
 {¶ 6} The matter was heard on April 14, 2004 in front of a magistrate, and the magistrate issued a decision on May 27, 2004 designating Brad as the residential parent. Stacy filed objections to the magistrate decision, but the trial court overruled those objections and adopted the decision of the trial court in its September 23, 2004 judgment entry. Stacy appealed, asserting the following assignment of error:
THE MODIFICATION OF THE RESIDENTIAL PARENT IS CONTRARY TO LAW.
 {¶ 7} Stacy contends that the decision modifying the residential parent is contrary to law because the lower court did not make the necessary findings under R.C. 3109.04(E)(1)(a). Specifically, appellant argues that the evidence does not support a finding that there was a substantial change in circumstances warranting a change in parental rights, and that the change in parental rights is not in Chad's best interests.
 {¶ 8} Decisions concerning child custody matters rest within the sound discretion of the trial court. Miller v. Miller (1988), 37 Ohio St.3d 71. The judge, acting as the trier of fact, is in the best position to observe the witnesses, weigh evidence and evaluate testimony. In reBrown (1994), 98 Ohio App.3d 337. Therefore, we must not substitute our judgment for that of the trial court's absent an abuse of discretion.Miller, 37 Ohio St.3d at 74; Davis v. Flickinger (1997), 77 Ohio St.3d 415,418. Accordingly, we will not reverse a trial court judgment that is "supported by a substantial amount of credible and competent evidence."Bechtol v. Bechtol (1990), 49 Ohio St.3d 21, 550 N.E.2d 178, syllabus.
 {¶ 9} The issue presented in this case is therefore whether the trial court's decision to modify the allocation of parenting rights and responsibilities is supported by a substantial amount of competent, credible evidence. Before a court can make such a modification, the trial court must find, "based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree," that (1) a change in circumstances has occurred, (2) a change in the parental rights and responsibilities is in the best interests of the child, and (3) one of the factors listed in R.C. 3109.04(E)(1)(a)(i) — (iii) applies. R.C. 3109.04(E)(1)(a). In the case sub judice, this requires the trial court to find "(iii) [that] the harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child." Id.
 {¶ 10} The threshold inquiry is whether a change has occurred in the circumstances of one of the parents or of the child; this issue must be addressed before moving to the final two prongs of the test. Id., Millerv. Miller (1988), 37 Ohio St.3d 71, 74. The record contains substantial competent, credible evidence supporting the finding that a change in circumstances has occurred.
 {¶ 11} First, there is evidence in the record that Stacy and Larry were interfering with Brad's visitation rights in various ways. One parent having a relationship with someone "that creates hostility by the residential parent, frustrating attempts at visitation, may be an unforeseen change in circumstances * * *." Davis, 77 Ohio St.3d at 419. There is ample evidence in the record indicating that the Gossards had frustrated Brad's visitation rights: Larry threatened and was hostile towards Brad during exchanges, Stacy refused to make exchanges at a neutral location, and Stacy constantly changed the "procedures" by which exchanges would be made by first prohibiting Brad from approaching the house and then refusing to come out to meet him at the curb. Moreover, Stacy was constantly out of contact with Brad. She frustrated attempts at communication by changing phone numbers without telling him, and then only provided a cell phone number but did not keep her cell phone on. Moreover, Stacy refused to agree to a change in the parenting schedule when Brad's work schedule changed to weekends, preventing him from spending any time with his son.
 {¶ 12} Second, the magistrate's decision relied on evidence exhibiting a change in Chad's behavior. The magistrate found that Chad had started "`banging' his head on hard surfaces, throwing things, having temper `fits,' and crying." The record supports this finding — all of Stacy's witnesses testified to this behavior. Importantly, while this behavior was sufficient to cause concern to the Gossard's babysitter, the Gossards themselves did not seek a medical or psychological evaluation of Chad. While this change in behavior may have coincided with the beginning of visitations with his father's family, there is no evidence that this type of behavior occurred in the Miller home.
 {¶ 13} Third, most troubling was the evidence presented concerning the circumstances in the Gossard home. Larry has a substantial history of alcohol use/abuse, and there was evidence in the record which indicates he may have given Chad and his own son Brandon alcohol. In one instance, Brad picked up Chad for visitation and there was a wet spot on Chad's shirt that smelled like beer. Brad notified the police, and the GAL's report indicates that the Sheriff's Department agreed that Chad smelled of beer. The GAL report also revealed several instances where Larry had given alcohol to his other children, including wine coolers and beer, which he referred to as "barley pop." The report also included this entry:
During his visit, GAL asked Brad to get a can of soda [out] of therefrigerator. GAL asked Brad if he would offer the can to Chad and referto it as "barley pop." When first offered Chad walked away [and] frownedand then when Brad offered it again, Chad pushed it away, turned with anunhappy expression on his face and grabbed hold of and hugged hisstepmother Teresa. 3/6/04
This evidence, though circumstantial, causes serious concerns when coupled with the reported instances of Larry giving alcohol to children and the documented report of Chad smelling of beer.
 {¶ 14} In addition to this evidence, there were other reported difficulties in the Gossard household. There are several reports of abuse and neglect, including three instances in which Children's services opened investigations, two of which were from mandatory reporters, the school and the police. There was also testimony pertaining to a recurring rash on Chad which Stacy failed to have treated.
 {¶ 15} Based on the foregoing, we find that there is sufficient evidence in the record to support the trial court's conclusion that a change of circumstances had occurred. The evidence was sufficient to establish the first prong of R.C. 3109.04(E)(1)(a).
 {¶ 16} The second prong of the test requires the trial court to find that the reallocation of parenting rights and responsibilities is in Chad's best interests. A non-exhaustive list of factors to be considered in this determination is outlined in R.C. 3109.04(F)(1). As previously indicated, there is a substantial amount of competent, credible evidence in the record supporting the court's conclusion that Chad's interaction and interrelationship with Larry, his stepfather, would not be in his best interests. R.C. 3109.04(F)(1)(c). In addition to the evidence mentioned above, Larry's own testimony causes concerns. He testified at the hearing in regards to disciplining the children: "A whack on the butt or send `em to bed or stand them in the corner. Taking the TV away from Brandon is the funnest, (sic) though. That really hurts him." Larry's theory of discipline as a means of "hurting" his children psychologically or emotionally is deeply troubling, as is the admission that he takes some form of pleasure out of it. Taken together, this evidence supports the conclusion that it is not in Chad's best interests to reside in the Gossard home.
 {¶ 17} Moreover, the evidence in the record supports the conclusion that Brad is "the parent more likely to honor and facilitate court-approved parenting time rights" and that Stacy has "continuously and willfully denied visitation." R.C. 3109.04(F)(1)(f) (i). We documented some of the problems surrounding exchanges of Chad supra. The parties were having such difficulties at the exchanges that they routinely involved the police. The evidence shows that Larry frequently involved himself in the exchanges and made threatening statements and gestures towards Brad, and that Stacy refused to make the exchanges a neutral site where Larry would not be present. The evidence also shows that Stacy denied Brad his parenting rights on four separate occasions. There were instances where Brad sought to exercise his visitation rights and the Gossards were not at their home. Finally, there was evidence in the record that Stacy refused to re-work the parenting schedule when Brad's job began requiring him to work Thursdays through Sundays, thereby preventing him from spending any time with Chad on visitation weekends.
 {¶ 18} Based on the foregoing, we find that there is sufficient evidence in the record supporting the trial court's finding that modifying the parenting rights is in Chad's best interests. Therefore, the second prong of R.C. 3109.04(E)(1)(a) is met.
 {¶ 19} Finally, although Stacy does not argue this issue in her appeal, the evidence in the record supports the trial court's determination that the benefits of reallocating parenting rights and responsibilities outweigh the harm. The documented reports of abuse and neglect in the Gossard, Larry's repeated alcoholrelated difficulties and his failure to seek treatment, and the change in Chad's behavior that manifests itself only in the Gossard home all support the conclusion that Chad will strongly benefit from a change in environment. Thus, the third prong of R.C. 3109.04(E)(1)(a) is met.
 {¶ 20} Accordingly, the trial court did not error in reallocating the parental rights and responsibilities by designating Brad as the residential parent. The assignment of error is overruled, and the judgment of the trial court is affirmed.
Judgment Affirmed.
 Cupp, P.J., and Rogers, J., concur.