**In re BROWN. (Two Cases.)**

[Cite as *In re Brown* (1994), 98 Ohio App.3d 337.]

Court of Appeals of Ohio,
Marion County.

Nos. 9-94-28, 9-94-31.

Decided Nov. 2, 1994.

338

*Wilson & Kochheiser Co., L.P.A.,* and *Keith A. Kochheiser,* for appellant, Amy Brown.

*Spohn, Spohn & Zeigler* and *S. Fredrick Zeigler,* for appellant, Marvin Brown.

*Jim Slagle,* Marion County Prosecuting Attorney, and *James P. Luton,* Assistant Prosecuting Attorney, for appellee, Marion County Children Services Board.

*Grimes & Russell* and *Mark Russell,* for guardian *ad litem.*

---

EVANS, Judge.

These are appeals by Marvin Brown and Amy Brown, natural parents of Nichole Marie Brown, from a judgment of the Court of Common Pleas of Marion County, Juvenile Division, granting the motion of the Marion County Children Services Board ("appellee") for permanent custody of Nichole.

Nichole was born in 1984. Her parents were married to each other for approximately a year. Following their divorce, Marvin Brown retained legal custody of Nichole. Marvin later married Robin Monk. Robin and Marvin raised Nichole until late 1991, when Marvin was incarcerated in Florida, for approximately a four-month period. At that time, Robin brought Nichole back to Ohio and left her with Amy Brown. Amy thereafter contacted appellee, requesting assistance in changing custody of Nichole to herself. Appellee requested "emergency temporary custody" of Nichole, on February 3, 1992. The court granted appellee's request on the same day. On June 11, 1992, Nichole was found by the court to be a dependent child, pursuant to a stipulation between appellee and Marvin Brown. In the same entry, appellee was awarded temporary custody of the child. There is no evidence in the record that Nichole's mother, Amy Brown, was ever notified by the court of the hearing which gave rise to these judgments.

Following court reviews of the case plans developed by appellee, Marvin Brown moved the court for a return of custody to him, alleging that he had complied with the case plan, had maintained a stable, suitable home, obtained the recommended psychological evaluations, and had visited with Nichole in order to maintain the parent-child relationship. The court denied the motion, based upon appellee's desire to subject the matter to further investigation. Shortly thereafter, Marvin was imprisoned following a "no contest" plea on a domestic violence charge arising from a disagreement between Marvin and his ex-wife, Robin Monk, with whom he still resides. Appellee filed its motion for permanent custody of Nichole, alleging that the parents had failed to cooperate in accomplishing the goals of the "case plan." After receiving notice of appellee's filing, Amy Brown also filed a motion for custody.

Hearings were held on appellee's motion on February 23, 1994 and March 3, 1994. Following the presentation of evidence by the three parties, the court granted appellee's motion for permanent custody of Nichole. Both of Nichole's

parents have appealed the judgment of the trial court. Amy Brown has asserted four assignments of error; Marvin Brown asserts two, which will be addressed along with Amy's assignments, where appropriate.

## MOTHER'S FIRST ASSIGNMENT OF ERROR

"The trial court committed reversible error by failing to enter a finding that the child cannot be place[d] with either of her parents within a reasonable time or should not be placed with her parents as required by Revised Code 2152.414(E)."

## FATHER'S FIRST ASSIGNMENT OF ERROR

"The judgment of the trial court in granting permanent custody was against the manifest weight of the evidence and contrary to law."

## FATHER'S SECOND ASSIGNMENT OF ERROR

"The trial court erred in granting appellee's motion for permanent custody and abused it's [*sic*] discretion in sustaining the motion for permanent custody of the Marion County Children Services Agency in that the procedures of Ohio Revised Code 2151.414 were not followed."

A trial court conducting a hearing on a motion for permanent custody must follow the guidelines set forth in R.C. 2151.414. Pursuant to R.C. 2151.353(A)(4), the court may grant such a motion if two determinations are made. The court must determine by clear and convincing evidence, after a child has been found by the court to be neglected, dependent, or abused, that it is in the child's best interest to grant the movant permanent custody "and that any of the following apply":

"(1) The child is not abandoned or orphaned and the child cannot be placed with either of his parents within a reasonable time or should not be placed with his parents;

"(2) The child is abandoned and the parents cannot be located;

"(3) The child is orphaned and there are no relatives of the child who are able to take permanent custody." R.C. 2151.414(B)(1) through (3).

When determining what is in the child's best interest, R.C. 2151.414(D) mandates that the court consider "all relevant factors, including, but not limited to, the following":

"(1) The reasonable probability of the child being adopted, whether an adoptive placement would positively benefit the child, and whether a grant of permanent custody would facilitate an adoption;

"(2) The interaction and interrelationship of the child with his parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;

"(3) The wishes of the child, as expressed directly by the child or through his guardian ad litem, with due regard for the maturity of the child;

"(4) The custodial history of the child;

"(5) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency."

█ Further, if the court has determined, based on R.C. 2151.414(B)(1), that a child cannot or should not be placed with the parents within a reasonable time (which would be the only appropriate finding in this case), the court must consider all relevant evidence, finding, by clear and convincing evidence, that one of eight conditions exists that would prohibit placement of the child with one of its parents.

The trial court, without designating which code sections it found applicable, noted that its decision was based on certain "factual findings," as follows: that Nichole's mother suffers from Schizo-affective disorder, borderline personality, and epilepsy, and therefore takes several psychoactive medications; that Amy "suffers from emotionality [sic], depression and over[-]excitement, and would find it difficult to parent full time"; that Nichole's father has been incarcerated several times; that Marvin had "just terminated a volatile relationship" with Robin, which involved a charge of domestic violence; that neither parent had been able to maintain permanent housing; that neither parent had "developed a relationship" with the child; that "the parents have failed repeatedly and continuously for a period of six months or more to substantially remedy the conditions that cause[d] the child to be removed from the home"; that the parents visited Nichole "sporadically" while she was in foster care; and that Nichole is adoptable and needs "a legally secure placement to provide stability" in her life.

█ In general, a reviewing court may not reverse a trial court's judgment based on the weight of the evidence presented, since the judge, when acting as the trier of facts, is in the best position to weigh the evidence and evaluate the testimony. However, as we noted above, an R.C. 2151.414 permanent custody determination must be supported by clear and convincing evidence. See, *e.g.*, *In re Davis* (June 3, 1994), Defiance App. Nos. 4–93–25 through 4–93–27, unreported, 1994 WL 240271. Clear and convincing evidence is more than a mere preponderance of the evidence. Rather, a petitioner must prove each of its allegations, clearly and convincingly, producing " 'in the mind of the trier of facts

a firm belief or conviction as to the facts sought to be established.'" *In re Adoption of Holcomb* (1985), 18 Ohio St.3d 361, 368, 18 OBR 419, 425, 481 N.E.2d 613, 620, quoting *Cross v. Ledford* (1954), 161 Ohio St. 469, 53 O.O. 361, 120 N.E.2d 118, paragraph three of the syllabus.[1]

While the court's findings, *supra*, appear to coincide with several of the given statutory factors, our review of the record establishes that many of the court's "factual" conclusions are unsupported by the evidence. Further, the court drew no discernible conclusions from the noted "factual findings," but simply stated that "[w]hile each individual act of the parents in and of itself might not warrant a granting of permanent custody, the totality of the acts, and the pattern of the parent[s'] behavior over the three year period prior to the filing of the motion more than satisf[y] the court that permanent custody requirements have been met and permanent custody should be granted."

We conclude that parents' constitutional rights may not be abridged by such a cursory judgment. The court is required by the statute to find, by clear and convincing evidence, that certain criteria have been met, and the court must state those findings on the record, such that it is clear to all parties that the decision is supported by the facts.[2] See R.C. 2151.353; R.C. 2151.414. See, *e.g., In re Burrell* (1979), 58 Ohio St.2d 37, 12 O.O.3d 43, 388 N.E.2d 738 (parent's conduct is significant only of it can be shown, by clear and convincing evidence, to have an adverse impact upon the child sufficient to warrant state intervention).

Moreover, it is evident from a review of the record and the judgment entry of the juvenile court that the court failed to make the requisite determinations of what is in Nichole's best interest. Rather, the court simply noted generally that Nichole "can be adopted quite readily," and that there existed "a great need for a legally secure placement to provide stability" in her life. There is no evidence that the court considered the other statutory factors which must be considered in determining a child's best interest, pursuant to R.C. 2151.414(D).

---

1. Appellant Marvin Brown, in his first assignment of error, requests that we find the trial court's decision to be "against the manifest weight of the evidence." As stated by the Supreme Court of Ohio, that is not the proper test under which we must evaluate the probate court's decision. *Holcomb*, 18 Ohio St.3d at 370, 18 OBR at 427, 481 N.E.2d at 622, fn. 3 (appeals court's application of "manifest weight of the evidence test" to an issue determined by application of "clear and convincing" standard was error, albeit harmless).

2. Appellee argues that our decision in *In the Matter of Kyle Hart* (Mar. 9, 1993), Marion App. No. 9–92–47, unreported, 1993 WL 69694, supports its contention that "no specific set of words is required" to establish the findings proscribed by the statute. In *Hart*, although the court did not cite the statutes, the judgment entry clearly set forth the facts supporting the court's decision. Thus, the court's omission was not prejudicial to the appellant. However, in this case, it is simply not evident from a review of the record and judgment entry that the court found clear and convincing evidence to support its findings.

Therefore, Amy Brown's first assignment of error and Marvin Brown's two assignments of error are sustained.

## MOTHER'S SECOND ASSIGNMENT OF ERROR

"[The trial court erred in granting] permanent custody to Marion County Children Services Board when the board [did] not use reasonable case planning and diligent efforts at reunification with the parents."

In determining whether a child could or should be placed with either parent within a reasonable time, reasonable case planning and diligent efforts at reunification with the parents are one of eight factors which the court may consider under R.C. 2151.414(E). As we stated above, it is not clear from the judgment entry which factors the court considered to make its finding that Nichole could not be returned to her parents. It is clear, however, that appellee made only minimal efforts to reunify Nichole with her family. The case plan set forth by appellee in this case stated only the most general of goals, and these goals were directed mainly toward altering behaviors of Amy and Marvin Brown. However, the only recommendations in the case plan which related to the parent-child relationship were that the "parents will attend all regularly scheduled visits," and that the "parents will not fight physically or verbally in front of Nichole." Curiously, there is no competent evidence in the record that would suggest that Amy and Marvin Brown maintain any type of relationship with one another, nor that Nichole is or ever has been affected by any altercations between her parents, save some problems which occurred around the time of their divorce approximately nine years ago. As to "regularly scheduled" visitation, it was shown at the hearing that there were never any regularly scheduled visits. Rather, Amy and Marvin were directed to call and set up visits, but no more often than once a week, and for no longer than one hour. Furthermore, these visits were to be supervised by appellee's employees, in settings totally nonconducive to maintenance or development of close parent-child relations. Moreover, the plan recommended that all three family members were to receive separate psychological evaluation and counseling, which they did. No counseling was ever even suggested to assist the Browns in developing parenting skills or family relationships.

█ R.C. 2151.419 requires a determination as to whether an agency made reasonable efforts to prevent removal or to "make it possible for the child to return home." The court made no such finding in this case. Moreover, based on our review of the record, we find it clear that appellee was not diligent in its attempts to reunite Nichole with either of her natural parents. The assignment of error is sustained.

## MOTHER'S THIRD ASSIGNMENT OF ERROR

"Reversible error was committed in overruling Mother's objection to privileged testimony of Doctor/Patient and Psychologist/Patient based on an improper release of information under Revised Code 2317.02(B) and 4732.19."

 One of the witnesses called by appellee to support its motion for permanent custody was Dr. J.T. Spare, a psychiatrist who had been counseling and treating appellant Amy Brown for approximately eight years. Amy objected to the introduction of Dr. Spare as a witness against her, asserting that she had not waived, and would not waive her privilege of confidentiality in the doctor/patient and counselor/client relationships she enjoyed with Dr. Spare. Appellee contends in its argument that, since Amy signed a "Release of Information" giving Children Services access to her counseling records, as "information as may be necessary regarding [her] treatment," she waived her right to prevent her long-time psychiatrist's testimony. The same arguments and objections were applied to the testimony of Alta Easterday, a licensed counselor and social worker.

We find the following reasoning by this court in *In re Decker* applicable to the facts of this case:

"The rationale for excluding material evidence offered by a treating physician is to encourage open disclosure by the patient to the doctor in order to facilitate proper diagnosis and treatment. * * * The crucial prerequisite for creation of the privilege is the voluntary consultation by the patient. This must be present to create the privilege in the patient, for if the patient is not voluntarily seeking help, then the underlying rationale for the privilege is not present, *i.e.*, the promotion of free and full discourse between physician and patient. Thus, there is no reason to exclude the relevant and material testimony of such physician.

"Based on this concept, claim is made that the confidential relationships arose from the reunification plan. However, such was not the testimony of those whose testimony was challenged, it appearing that their association with the parents had other and earlier beginnings and was based on other considerations. Moreover, though from a close examination of the reunification plan it appears that it contemplates that the parents will participate in 'mental health counseling,' it does not appear that it contemplates that they will submit to testing, observation and examination to provide expert testimony as to their respective mental conditions." (Citations omitted.) *In re Decker* (1984), 20 Ohio App.3d 203, 204, 20 OBR 248, 249–250, 485 N.E.2d 751, 752–753.

In *Decker*, the court went on to find that the admission of the incompetent physician/counselor testimony, although prejudicial to the appellants, did not entitle them to a reversal of the decision because the record contained sufficient

other evidence of the parents' mental status and their incriminating behavior, such that it was clear "that the rejection of the incompetent testimony could not have changed the result of the trial." However, following our review of the record in this case, we find that, absent the challenged physician and counselor evidence in this case, there is no other evidence concerning Amy's competence to care for her daughter upon which the trial judge could have based a decision that there was clear and convincing evidence that the child "could not * * * or should not be placed with her [mother]." Thus, we are unable to find, as we did in *Decker*, that the result of the hearing would not have been different absent the incompetent testimony, since it appears that the trial court based its decision solely on that testimony. We therefore find that Amy Brown's assertion of the privilege at the hearing should have prevented the introduction into evidence of the testimony of her physician and counselor, on matters which were personal and confidential. The assignment of error is sustained.

## MOTHER'S FOURTH ASSIGNMENT OF ERROR

"It is reversible error for the trial court to grant Marion County Children Services Board's motion for permanent custody when the mother and her counsel failed to receive notification of a hearing in which dependency was adjudicated contrary to Revised Code 2151.413(A)."

▮ Appellant Amy Brown argues in her brief that the court erred in terminating her parental rights because she was never given notice of the hearing wherein Nichole was adjudged dependent. We agree. In *In re Corey* (1945), 145 Ohio St. 413, 31 O.O. 35, 61 N.E.2d 892, the Supreme Court of Ohio held as follows:

"[T]he parents of minor children are entitled to notice, actual or constructive, in a proceeding instituted in the Juvenile Court upon a complaint of dependency of such children. *Unless such notice is given to the parents, the jurisdiction of the court does not attach and a judgment or commitment rendered in such proceeding is void.*" (Emphasis added.) *Id.* at paragraph one of the syllabus.

Accordingly, pursuant to the holding of the Supreme Court, we find that the "stipulation" of dependency entered into by appellee and Marvin Brown was insufficient to support the trial court's adjudication of dependency and commitment of Nichole to appellee's custody, when the record contains no evidence that appellant Amy Brown was ever apprised of the dependency hearing and thus was given no opportunity to protest the ultimate loss of her parental rights as to Nichole. See *In re Fassinger* (1975), 42 Ohio St.2d 505, 71 O.O.2d 503, 330 N.E.2d 431. The assignment of error is sustained.

Having found error prejudicial to the appellants herein in the particulars assigned and argued, we reverse the judgments of the juvenile court and remand the case to that court for proceedings consistent with this opinion.

*Judgments reversed*
*and cause remanded.*

THOMAS F. BRYANT and HADLEY, JJ., concur.