OPINION
{¶ 1} Plaintiff-appellant, Sarah Shaffer (hereinafter "Sarah"), appeals the judgment of the Paulding County Court of Common Pleas granting Sarah a divorce from defendant-appellee, Justin Shaffer (hereinafter "Justin"), and granting custody of the parties' minor child to Justin.
 {¶ 2} Justin and Sarah were married July 3, 2003 in North Carolina. They had one child, Justin Jr., born February 6, 2003. At the time of the parties' marriage, Justin was stationed in Virginia Beach, Virginia with the United States Navy, but was called to active duty shortly thereafter. After Justin deployed, Sarah moved from North Carolina to Ohio to be close to Justin's family.
 {¶ 3} On August 6, 2004, Sarah filed a complaint for divorce. Pursuant to the ex-parte orders of the court, Sarah was designated the residential parent of Justin Jr. On August 9, 2004, Justin filed a counterclaim for divorce on the grounds of adultery and filed a motion to vacate the ex-parte orders alleging that Sarah was unfit.
 {¶ 4} A hearing was held on Justin's motion on August 12, 2004. At the hearing, the trial court was made aware that Justin was serving in the Navy and that his mother, Tammy Balser, would be willing to assume care for Justin Jr.
 {¶ 5} Following the presentation of evidence, the trial court vacated the ex-parte orders and designated Justin the residential parent. As Justin was on active duty, the court approved placement of Justin Jr. with Tammy Balser.
 {¶ 6} The final divorce hearing was held November 17, 2004. After considerable testimony, the trial court determined that Justin should remain the residential parent of Justin Jr., as the child had been subjected to abuse and neglect by Sarah, but that Sarah would have visitation pursuant to the court's standard visitation order. The trial court further ordered that Justin be allowed to claim Justin Jr. for income tax exemption purposes for 2004 and each year thereafter, subject to future modification by the court; ordered Sarah to pay child support; and granted the parties a divorce. The trial court's entry was journalized December 7, 2004.
 {¶ 7} It is from this judgment that Sarah now appeals and sets forth four assignments of error for our review. For clarity of analysis, we have combined the second and third assignments of error.
 ASSIGNMENT OF ERROR NO. I The trial court erred in granting vacating [sic] its ex-partetemporary custody order and granting temporary custody toAppellee and allowing Appellee to place the child with TammyBalser.
 {¶ 8} In her first assignment of error, Sarah alleges that the trial court erred in vacating the ex-parte orders and granting temporary custody of Justin Jr. to Justin. Section3(B)(2), Article IV of the Ohio Constitution limits this court's appellate jurisdiction to the review of final judgments of lower courts, however, and it is well settled that a temporary order allocating custody between parents is not a final judgment. See,e.g., State ex rel. Thompson v. Spon (1998), 83 Ohio St.3d 551,554; State ex rel. Wallacy v. Smith (1997), 78 Ohio St.3d 47,50-51; In re Devlin (1992), 78 Ohio App.3d 543. Accordingly, we have no jurisdiction to review this assignment of error.
 {¶ 9} Sarah's first assignment of error is dismissed.
 ASSIGNMENT OF ERROR NO. II The trial court erred as a matter of law when it determinedthat did [sic] not need to consider the criteria listed underSection 3109.04(F)(1) in making its determination of which parentto name as the residential parent.
 ASSIGNMENT OF ERROR NO. III The trial court's decision granting custody of the parties'minor child to Appellee is not supported by the evidence andconstitutes an abuse of the court's discretion.
 {¶ 10} Decisions concerning child custody matters rest within the sound discretion of the trial court in accord with the elements, standards and factors of R.C. 3109.04, which focus on the best interests of the child. Marshall v. Marshall (1997),117 Ohio App.3d 182. The judge, acting as the trier of fact, is in the best position to observe the witnesses, weigh evidence and evaluate testimony. In re Brown (1994), 98 Ohio App.3d 337. Therefore, we must not substitute our judgment for that of the trial court's absent an abuse of discretion. Davis v.Flickinger (1997), 77 Ohio St.3d 415, 418. Accordingly, we will not reverse a trial court judgment that is "supported by a substantial amount of credible and competent evidence." Bechtolv. Bechtol (1990), 49 Ohio St.3d 21, syllabus.
 {¶ 11} In her second and third assignments of error, Sarah alleges error in the trial court's determination that Justin be named the residential parent of Justin Jr. Sarah first contends that the trial court erred by failing to consider the criteria found in R.C. 3109.04(F)(1) when determining custody of Justin Jr. and that the trial court's decision was based solely on the court's conclusion that Sarah had abused and neglected the child. Sarah asserts that the failure to consider the statutory factors resulted in a decision that was not supported by competent, credible evidence. In fact, Sarah argues that the factors of R.C.3109.04(F)(1) support her designation as residential parent of Justin Jr.
 {¶ 12} R.C. 3109.04(F)(1) states in pertinent part:
In determining the best interest of a child * * *, the courtshall consider all relevant factors, including, but not limitedto:
 (a) The wishes of the children's parents regarding the child'scare;
 (b) If the court has interviewed the child in chambers pursuantto division (B) of this section regarding the child's wishes andconcerns as to the allocation of parental rights andresponsibilities concerning the child, the wishes and concerns ofthe child, as expressed to the court;
 (c) The child's interaction and interrelationship with thechild's parents, siblings, and any other person who maysignificantly affect the child's best interest;
 (d) The child's adjustment to the child's home, school, andcommunity;
 (e) The mental and physical health of all persons involved inthe situation;
 (f) The parent more likely to honor and facilitatecourt-approved parenting time rights or visitation andcompanionship rights;
 (g) Whether either parent has failed to make all child supportpayments, including all arrearages, that are required of thatparent pursuant to a child support order under which that parentis an obligor;
 (h) Whether either parent previously has been convicted of orpleaded guilty to any criminal offense involving any act thatresulted in a child being an abused child or a neglected child;whether either parent, in a case in which a child has beenadjudicated an abused child or a neglected child, previously hasbeen determined to be the perpetrator of the abusive orneglectful act that is the basis of an adjudication; whethereither parent previously has been convicted of or pleaded guiltyto a violation of section 2919.25 of the Revised Code involving avictim who at the time of the commission of the offense was amember of the family or household that is the subject of thecurrent proceeding; whether either parent previously has beenconvicted of or pleaded guilty to any offense involving a victimwho at the time of the commission of the offense was a member ofthe family or household that is the subject of the currentproceeding and caused physical harm to the victim in thecommission of the offense; and whether there is reason to believethat either parent has acted in a manner resulting in a childbeing an abused child or a neglected child;
 (i) Whether the residential parent or one of the parentssubject to a shared parenting decree has continuously andwillfully denied the other parent's right to parenting time inaccordance with an order of the court;
 (j) Whether either parent has established a residence, or isplanning to establish a residence, outside this state.
 {¶ 13} At the final hearing, in the case sub judice, the following evidence was introduced: Sarah is nineteen years old and employed by Wendy's restaurant in Locust, North Carolina, where she rents a home with her mother, Brenda Cabe. Sarah testified that she works approximately 30 hours a week, usually at night; when Sarah is at work her mother cares for Addison, Sarah's three-year-old daughter, and could care for Justin Jr. as well. Sarah testified that the home she and her mother shared was set up for Justin Jr. to come live with them and was a good environment for Justin. Sarah stated that he would be sharing a room with Addison and that there was a large backyard that he could play in. Sarah also testified that she was working toward getting a home of her own that she could share with Addison, Justin Jr., and the child with whom she is now pregnant, whose birth is anticipated in February 2005.
 {¶ 14} Justin also testified at the final hearing and stated the following: he is twenty-one years old and is employed by the United States Navy until his service ends in September 2007. Justin also testified that while he was on active duty, Justin's sister, Jerrica, and mother, Tammy Balser, assumed care of Justin Jr.; at the time of the final hearing, Justin's squadron was on standby to be deployed, however, that standby was scheduled to end in December 2004, approximately one month after the final divorce hearing. Justin testified that his intention would be to have Jerrica and Tammy care for Justin Jr. until his standby ended and then have Justin Jr. move to Virginia where Justin is stationed. Justin stated that he was very close to his son and spends as much time as possible with him.
 {¶ 15} Tammy testified that she was concerned about Justin Jr. being in Sarah's care in the future due to Sarah's previous care of the child. In particular, Tammy cited instances where Sarah would call Tammy to take care of Justin Jr. because he was "getting on her nerves;" in fact, Tammy estimated that she and Jerrica were taking care of Justin Jr. about 90 percent of the time while Sarah was living in Ohio; Tammy stated that Sarah's apartments in Ohio were very dirty, with dirty diapers and food lying around, moldy dishes in the kitchen sink, dirty clothes piled everywhere and that Justin Jr. shared a bedroom with Sarah's older daughter and Sarah's boyfriend's four children and the room was only furnished with four baby mattresses on the floor. She stated that Sarah would often leave the children unattended in the apartment and go visit with her neighbors or even go to a bar; that Justin Jr. was often not appropriately dressed for the weather, with no coat, hat or shoes in the winter.
 {¶ 16} Officer Victoria Clemens and Paulding County Job and Family Services social worker Jessica Reinhart reiterated Tammy's testimony. Officer Clemens stated that she had received a complaint of child abuse and an investigation in conjunction with Job and Family Services was initiated regarding Sarah's care of her children. Jessica Reinhart testified that the situation was not severe enough to immediately remove the children from Sarah's care, but the agency did seek protective supervision for the children. Officer Clemens stated that she turned the findings over to the Paulding County prosecutor's office but no charges were filed against Sarah. The prosecutor did, however, refer the matter to an agency in North Carolina where Sarah moved prior to the final divorce hearing.
 {¶ 17} Two of Sarah's former neighbors also testified, stating that they heard Sarah scream and curse at Addison and Justin Jr., saw her smack them in the face, call them names and, generally, show no affection towards them. The neighbors testified that Sarah would leave the children in the apartment while she visited with them or went to her car to smoke or left the complex entirely.
 {¶ 18} Sarah disputed all of the allegations made about her care of Justin Jr. She claimed that statements she made that "she did not like living in Ohio" and "wanted to leave" had resulted in a "falling out" with several people.
 {¶ 19} The trial court considered the preceding evidence and stated at the final hearing:
[t]his is not a case that fits under 3109.04 as a criteriathat we're supposed to consider. Under 3109.04(F)(1) it listsseveral things that the Court is to consider and really none ofthose apply to or at least are not significant as far is thisCourt is concerned in making this determination; but based uponthe testimony that I've heard here, particularly from the nonfamily members, which I find to be credible, they have nothing togain by coming in here and testifying to what they testified tohere. And I do find that these children, not only the child ofthis marriage but the child by the prior relationship, weresubjected to abuse and neglect by [Sarah]; and the Court doesfind that it is in the best interest of the child, Justin, Jr.,that the defendant father be designated as the custodial parentsubject to the Plaintiff's right to exercise visitation pursuantto the Court's standard visitation schedule.
 {¶ 20} Although Sarah contends that the trial court did not consider the criteria of R.C. 3109.04(F)(1), the court made clear that the criteria were considered, but that the court found there were overriding reasons, apart from the specifically enumerated factors, that were integral in determining custody of Justin Jr. We find that this was within the court's discretion as R.C. 3109.04(F)(1) specifically states that the court is not limited to the factors contained in the statute in determining the best interest of a child.
 {¶ 21} Further, although Sarah contends that the trial court based its custody determination solely on the basis of the abuse and neglect allegations which were never substantiated and of which she was never convicted, the allegations were, nevertheless, a relevant consideration for the trial court in determining the best interests of Justin Jr.
 {¶ 22} From the evidence of record, we cannot find that the trial court abused its discretion in naming Justin the residential parent of Justin Jr. We find that the trial court's decision is supported by competent, credible evidence and was based on a consideration of not only the relevant statutory factors, but the evidence presented.
 {¶ 23} Sarah's second and third assignments of error are overruled.
 ASSIGNMENT OF ERROR NO. IV The trial court abused its discretion by failing to order theequal division of the parties 2004 tax refunds.
 {¶ 24} In the final assignment of error, Sarah contends that the trial court erred in failing to order an equal division of the parties' 2004 tax refunds. We note that a trial court has broad discretion in making divisions of property in domestic cases. Berish v. Berish (1982), 69 Ohio St.2d 318. A trial court's decision will be upheld absent an abuse of discretion.Holcomb v. Holcomb (1989), 44 Ohio St.3d 128. An abuse of discretion is more than an error of law or judgment; it implies that the court acted in an unreasonable, arbitrary, or unconscionable fashion. Blakemore v. Blakemore (1983),5 Ohio St.3d 217. If there is some competent, credible evidence to support the trial court's decision, there is no abuse of discretion. Ross v. Ross (1980), 64 Ohio St.2d 203.
 {¶ 25} Sarah argues that the tax refund was a marital asset, not separate property, and was subject to equal division pursuant to R.C. 3105.171. Although an equal division is a starting point when allocating marital property and debt, a decision need not be equal to be equitable. See R.C. 3105.171(C)(1). This decision is for the trier of fact, not a reviewing court, and thus, it will not be reversed absent an abuse of discretion. Landry v. Landry
(1995), 105 Ohio App.3d 289.
 {¶ 26} The trial court herein stated the following at the final hearing:
With regard to the tax refund, as Mr. Hyman stated, if thedivorce, which the divorce is going to be granted before the endof the year, they cannot file any joint return, so they'll haveto file separately. The Court is not going to order any divisionof the income tax refunds that either one of them are entitled toreceive as a result of their separate filings. So each of themwill keep whatever incomes they may be entitled to receive.
 {¶ 27} From the trial court's order, we find that the court did not, as Sarah asserts, find the parties' tax refunds to be separate property. Rather, from our reading, it is evident that the trial court found that any available refund would be marital property, but found that it was equitable to divide the refund in such a way that Sarah and Justin would only be entitled to the portion calculated from their respective, separate returns.
 {¶ 28} The evidence presented indicated that Sarah and Justin were living apart for at least one year prior to the final divorce hearing, November 17, 2004. Therefore, they were living separately for the entirety of the 2004 tax year. Justin was employed by the Navy, earning approximately $4,000 per month that he was sending to Sarah for the care of Justin Jr. There was no evidence introduced that Sarah was employed during 2004.
 {¶ 29} After reviewing the evidence and noting the lack of any evidence as to the potential amount of the tax refund of either party or even if either party would be entitled to a refund for the 2004 tax year, we are unable to find that the trial court abused its discretion by ordering that each party receive their respective potential refund.
 {¶ 30} Sarah's fourth assignment of error is overruled.
 {¶ 31} Having found no error prejudicial to appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment affirmed.
 Rogers and Shaw, J.J., concur.