OPINION
{¶ 1} The defendant-appellant, Erikka Thompson ("Erikka"), appeals the judgment of the Seneca County Common Pleas Court Juvenile Division affirming the Magistrate's Decision and designating the plaintiff-appellee, Bernabe Pennycuff ("Bernie"), as the legal custodian and residential parent of the parties' minor child, Marina Pennycuff ("Marina").
 {¶ 2} Marina was born on September 17, 1999. Bernie and Erikka were not, and have never been, married. Erikka was apparently the primary care giver prior to this litigation, and the parties mutually agreed on visitation schedules, as there were no court orders. A child support order was effective until July 6, 2005, ordering Bernie to pay child support to Erikka.
 {¶ 3} In July 2005, Erikka gained employment as a back-up singer in Branson, Missouri and planned to move Marina to Arkansas to live with her. On July 6, 2005, Bernie became aware of these plans. He filed a motion to review support, a motion for allocation of parental rights and responsibilities, and a motion for an ex parte order. The trial court granted the ex parte order and placed Marina in the emergency temporary custody of Bernie. On July 19, 2005, the court appointed a guardian ad litem for Marina, and the parties reached a temporary agreement on custody. On August 11, 2005, the guardian ad litem filed her report, and the magistrate held a hearing on the motion for allocation of parental rights and responsibilities. June Huss, the guardian ad litem; Erikka; Maria Pennycuff, the paternal grandmother; Bernie; Andrew Martin, Erikka's acquaintance; and Gloria Thompson, the maternal grandmother, testified at the hearing.
 {¶ 4} On August 12, 2005, the magistrate filed a summary of her decision. The magistrate granted legal custody to Bernie and designated him as the residential parent. Erikka filed a motion for findings of fact and conclusions of law, and the magistrate filed the same on August 31, 2005. Erikka filed objections to the magistrate's decision on September 6, 2005, and Bernie filed a motion to dismiss Erikka's objections. Erikka appeals the trial court's judgment of December 12, 2005, denying Erikka's objections and affirming the magistrate's decision. Erikka asserts a sole assignment of error on appeal:
The Trial Court erred to the prejudice of Defendant-Appellantby denying Defendant-Appellant's Objections to the Magistrate'sDecision and upholding the Magistrate's Decision to awardPlaintiff-Appellee custody of the Minor Child, Marina Pennycuff.
 {¶ 5} A trial court must "conduct an independent review when a party files objections to" a magistrate's decision. See Reesev. Reese, 3rd Dist. No. 14-03-42, 2004-Ohio-1395, at ¶ 11. On appeal, the trial court's judgment will not be reversed "if it is supported by some competent, credible evidence." Id. at ¶ 13 (citing Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77,80, 461 N.E.2d 1273); Bechtol v. Bechtol (1990),49 Ohio St.3d 21, 550 N.E.2d 178, syllabus. However, we recognize that the "trial court is in the best position to observe the witnesses, weigh evidence and evaluate testimony." Shaffer v. Shaffer,
3rd Dist. No. 11-04-22, 2005-Ohio-3884, at ¶ 10 (citing Inre Brown (1994), 98 Ohio App.3d 337, 648 N.E.2d 576). Therefore, the trial court has broad discretion in making custody determinations, and its decision will not be reversed absent an abuse of discretion. Id. (citing Davis v. Flickinger (1997),77 Ohio St.3d 415, 418, 674 N.E.2d 1159). An "`abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983),5 Ohio St.3d 271, 219, 450 N.E.2d 1140 (quoting State v. Adams (1980),62 Ohio St.2d 151, 157, 404 N.E.2d 144 (internal citations omitted)).
 {¶ 6} "[I]n any proceeding pertaining to the allocation of parental rights and responsibilities for the care of a child", the court must review pertinent testimony and evidence and "allocate the parental rights and responsibilities for the care of the minor children[.]" R.C. 3109.04(A). Relevant to this case, neither party requested a shared parenting plan, nor did either party submit a proposed shared parenting plan to the court. Therefore, the court had to consider the best interest of the child and "allocate the parental rights and responsibilities for the care of the children primarily to one of the parents, designate that parent as the residential parent and the legal custodian of the child, and divide between the parents the other rights and responsibilities for the care of the children[.]" R.C.3109.04(A)(1). In determining the best interest of the child, the court must consider all relevant factors, including the following statutory factors:
(a) The wishes of the child's parents regarding the child'scare;
 (b) If the court has interviewed the child in chamberspursuant to division (B) of this section regarding the child'swishes and concerns as to the allocation of parental rights andresponsibilities concerning the child, the wishes and concerns ofthe child, as expressed to the court;
 (c) The child's interaction and interrelationship with thechild's parents, siblings, and any other person who maysignificantly affect the child's best interest;
 (d) The child's adjustment to the child's home, school, andcommunity;
 (e) The mental and physical health of all persons involved inthe situation;
 (f) The parent more likely to honor and facilitatecourt-approved parenting time rights or visitation andcompanionship rights;
 (g) Whether either parent has failed to make all child supportpayments, including all arrearages, that [sic] are required ofthat parent pursuant to a child support order under which thatparent is an obligor;
 (h) Whether either parent previously has been convicted of orpleaded guilty to any criminal offense involving any act thatresulted in a child being an abused child or a neglected child;whether either parent, in a case in which a child has beenadjudicated an abused child or a neglected child, previously hasbeen determined to be the perpetrator of the abusive orneglectful act that is the basis of an adjudication; whethereither parent previously has been convicted of or pleaded guiltyto a violation of section 2919.25 of the Revised Code involving avictim who at the time of the commission of the offense was amember of the family or household that is the subject of thecurrent proceeding; whether either parent previously has beenconvicted of or pleaded guilty to any offense involving a victimwho at the time of the commission of the offense was a member ofthe family or household that is the subject of the currentproceeding and caused physical harm to the victim in thecommission of the offense; and whether there is reason to believethat either parent has acted in a manner resulting in a childbeing an abused child or a neglected child;
 (i) Whether the residential parent or one of the parentssubject to a shared parenting decree has continuously andwillfully denied the other parent's right to parenting time inaccordance with an order of the court;
 (j) Whether either parent has established a residence, or isplanning to establish a residence, outside this state.
R.C. 3109.04(F)(1)(a)-(j).
 {¶ 7} In this matter, the trial court stated it had performed an independent analysis, and it made a few additional findings not addressed by the magistrate. See J. Entry, Dec. 12, 2005. The trial court set forth certain facts obtained through its reading of the hearing transcript. Id. at ¶¶ 21(a)-(z). The court then established each statutory factor, made a finding, and set forth facts in support thereof. Id. at ¶ 22(a)-(j). The trial court found that each parent wished to be Marina's residential parent and legal custodian. Id. at ¶ 22(a); R.C. 3109.04(F)(1)(a). The court did not perform an in camera interview with Marina, but the guardian ad litem had spoken with Marina about her wishes, and the court considered that testimony. J. Entry, at ¶ 22(b); R.C.3109.04(F)(1)(b). The trial court found that Marina has no siblings, but "has contact with her paternal and maternal relatives on a regular basis[.]" J. Entry, at ¶ 22(c); R.C.3109.04(F)(1)(c). The trial court found that Marina is six years old and enrolled in the Tiffin Public Schools, and it noted that Erikka's employer had offered to pay for Marina's education at a private school in Arkansas. J. Entry, at ¶ 22(d); R.C.3109.04(F)(1)(d). As to the parties' mental and physical health, the court found as follows: Bernie has a problem with alcohol, and has smoked marijuana in the last year, but he is enrolled in counseling; Bernie has been in counseling in the past, but has not been successful; Bernie lives with his mother, who has no alcohol in her home; Bernie has left Marina in the care of another adult when he went drinking; Erikka takes medication for allergies; Erikka has taken medication for depression in the past, but has not sought treatment in the last two years; neither parent suffers from any disability; and Marina takes medication for allergies and may need glasses, but she does not suffer from any disabilities. J. Entry, at ¶ 22(e); R.C. 3109.04(F)(1)(e). The court found that the parties had successfully negotiated visitation arrangements in the past, and each parent wants the other to visit Marina on a regular basis. J. Entry, at ¶ 22(f); R.C. 3109.04(F)(1)(f). A child support order was in place, but the court had no information pertaining to payment history or arrearages. J. Entry, at ¶ 22(g); R.C. 3109.04(F)(1)(g). The court found neither parent had been convicted of, or committed, any offense, which resulted in the neglect or abuse of Marina. J. Entry, at ¶ 22(h). However, Bernie has convictions for driving under the influence, domestic violence, drug paraphernalia, and disrupting public service. Id. The court found that Erikka was the victim of the convictions for domestic violence and disrupting public services. Id. There was no evidence that Marina was involved in the domestic violence incident, but the testimony indicated she may have been asleep in a different room during the disrupting public service incident. Id. Erikka has been convicted for failing to pay city income tax. Id. Marina has not been endangered by any of the events for which the parties have been convicted. Id.; R.C. 3109.04(F)(1)(h). The court found that neither parent submitted a shared parenting plan, and Erikka has established a residence in Arkansas. J. Entry, at ¶¶ 22(i), (j). The trial court noted the conflicting evidence as to how Erikka met her current employer, which led to her job as a back-up singer in a theater in Branson, Missouri. Id. at ¶ 22(j). The court found Erikka's salary to be $400 per week, and her rent to be $400 per month. Id. The court noted the following: Erikka meets men through the internet and has received gifts and/or visited some of her contacts, though the motivation for these men to send the gifts has not been identified; Erikka did not notify Bernie that she intended to take Marina to Arkansas; Erikka has left the state of Ohio and left Marina in Bernie's care; and Erikka has previously disappeared so there was no way to contact her. Id.
 {¶ 8} The court did not address the factors of R.C.3109.04(F)(2) because there is no shared parenting plan. The court then found it in the child's best interest to remain with Bernie because he resides with his mother, who has provided a more stable home than Erikka will be able to provide in Arkansas. Likewise, Marina would be able to continue to have contact with her maternal relatives. Id. at ¶ 23.
 {¶ 9} Our review of the record indicates that most of the testimony was consistent. Where there may have been inconsistencies, the trial court was in the better position to weigh the credibility of the witnesses. We recognize that each parent has faults, as do all humans, but the court has to decide which living scenario would be in Marina's best interest. The court addressed each statutory factor, and noted some additional facts, which evidently had an impact on its decision. We cannot find the trial court abused its discretion in designating Bernie as Marina's residential parent and legal custodian. The sole assignment of error is overruled.
 {¶ 10} The judgment of the Seneca County Common Pleas Court is affirmed.
Judgment Affirmed.
 Rogers and Shaw, JJ., concur.