OPINION
{¶ 1} The defendant-appellant, Drucilla Ann Minger, now known as Drucilla Ann Hess ("Drucilla"), appeals the judgment of the Seneca County Common Pleas Court, Juvenile Division, denying her objections to the magistrate's decision, which designated the plaintiff-appellee, John Henry Scott ("John"), legal custodian and residential parent of the parties' minor child, Bailey Scott ("Bailey").
 {¶ 2} In 2000, John and Drucilla resided together with John's parents and Drucilla's children from a prior relationship, Brian Minger ("Brian") and Tiara Minger ("Tiara"). In 2001, John, Drucilla, Brian, and Tiara moved to the Echo Village Apartments in Fostoria, Ohio. At the time, Drucilla was pregnant with Bailey, who was born in May 2001. The parties shared an apartment until Drucilla took Brian, Tiara, and Bailey and moved out in July 2003. Since that time, Drucilla has married Jamie Hess ("Jamie") and moved to Mechanicsburg, Ohio. Drucilla and Jamie reside in a five-bedroom mobile home with Brian, Tiara, Bailey, their baby, Jamie's son, and Jamie's adult brother. John resides in Fostoria, Ohio with his fiancée, Denise Emery ("Denise"), and her daughter. At the time of the hearing, Denise was pregnant with John's child.
 {¶ 3} On August 25, 2003, John filed three motions: a motion for custody, a motion to establish visitation and companionship between the parties, and a motion for child support, medical orders, and tax exemption orders. Drucilla filed a motion for genetic testing, which was granted,[1] and on November 16, 2004, the magistrate held a hearing on the pending motions. At the hearing, John testified on his own behalf and presented the testimony of ten witnesses, including Drucilla. John moved four exhibits into evidence. Drucilla presented the testimony of three witnesses and moved four exhibits into evidence. The magistrate filed his decision on February 15, 2005, designating John as Bailey's residential parent and legal custodian. Drucilla filed objections to the magistrate's decision on February 22, 2005, which the trial court overruled on January 31, 2006. Drucilla appeals the trial court's judgment and asserts the following assignment of error:
The Trial Court erred to the prejudice of the Appellant bydenying the Appellant's Objections to the Magistrate's Decisionand upholding the Magistrate's Decision to award Appellee custodyof the Minor Child, Bailey Scott.
 {¶ 4} Drucilla argues that the trial court failed to consider that she has been Bailey's primary caregiver since 2003. Drucilla also essentially contends that the trial court should have construed the evidence in her favor. In response, John essentially argues that the trial court has discretion in weighing the evidence and assessing witness credibility.
 {¶ 5} When a party objects to a magistrate's decision, the trial court must "conduct an independent review". See Reese v.Reese, 3rd Dist. No. 14-03-42, 2004-Ohio-1395, at ¶ 11. On appeal, the trial court's judgment will not be reversed "if it is supported by some competent, credible evidence." Id. at ¶ 13 (citing Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77,80, 461 N.E.2d 1273); Bechtol v. Bechtol (1990),49 Ohio St.3d 21, 550 N.E.2d 178, syllabus. However, we recognize that the "trial court is in the best position to observe the witnesses, weigh evidence and evaluate testimony." Shaffer v. Shaffer, 3rd Dist. No. 11-04-22, 2005-Ohio-3884, at ¶ 10 (citing In re Brown
(1994), 98 Ohio App.3d 337, 648 N.E.2d 576). Therefore, the trial court has broad discretion in making custody determinations, and its decision will not be reversed absent an abuse of discretion. Id. (citing Davis v. Flickinger, 77 Ohio St.3d 415, 418,1997-Ohio-260, 674 N.E.2d 1159). An "`abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (quoting State v. Adams (1980),62 Ohio St.2d 151, 157, 404 N.E.2d 144 (internal citations omitted)).
 {¶ 6} "[I]n any proceeding pertaining to the allocation of parental rights and responsibilities for the care of a child", the trial court must review pertinent testimony and evidence and "allocate the parental rights and responsibilities for the care of the minor [child.]" R.C. 3109.04(A). Relevant to this case, neither party requested a shared parenting plan, nor did either party submit one to the court. Therefore, the court had to consider the best interests of the child and "allocate the parental rights and responsibilities for the care of the [child] primarily to one of the parents, designate that parent as the residential parent and the legal custodian of the child, and divide between the parents the other rights and responsibilities for the care of the [child]" R.C. 3109.04(A)(1). In determining the best interests of the child, the court must consider all relevant factors, including the following statutory factors:
(a) The wishes of the child's parents regarding the child'scare;
 (b) If the court has interviewed the child in chamberspursuant to division (B) of this section regarding the child'swishes and concerns as to the allocation of parental rights andresponsibilities concerning the child, the wishes and concerns ofthe child, as expressed to the court;
 (c) The child's interaction and interrelationship with thechild's parents, siblings, and any other person who maysignificantly affect the child's best interest;
 (d) The child's adjustment to the child's home, school, andcommunity;
 (e) The mental and physical health of all persons involved inthe situation;
 (f) The parent more likely to honor and facilitatecourt-approved parenting time rights or visitation andcompanionship rights;
 (g) Whether either parent has failed to make all child supportpayments, including all arrearages, that are required of thatparent pursuant to a child support order under which that parentis an obligor;
 (h) Whether either parent previously has been convicted of orpleaded guilty to any criminal offense involving any act thatresulted in a child being an abused child or a neglected child;whether either parent, in a case in which a child has beenadjudicated an abused child or a neglected child, previously hasbeen determined to be the perpetrator of the abusive orneglectful act that is the basis of an adjudication; whethereither parent previously has been convicted of or pleaded guiltyto a violation of section 2919.25 of the Revised Code involving avictim who at the time of the commission of the offense was amember of the family or household that is the subject of thecurrent proceeding; whether either parent previously has beenconvicted of or pleaded guilty to any offense involving a victimwho at the time of the commission of the offense was a member ofthe family or household that is the subject of the currentproceeding and caused physical harm to the victim in thecommission of the offense; and whether there is reason to believethat either parent has acted in a manner resulting in a childbeing an abused child or a neglected child;
 (i) Whether the residential parent or one of the parentssubject to a shared parenting decree has continuously andwillfully denied the other parent's right to parenting time inaccordance with an order of the court;
 (j) Whether either parent has established a residence, or isplanning to establish a residence, outside this state.
R.C. 3109.04(F)(1)(a)-(j).
 {¶ 7} In this case, the trial court stated it had performed an independent review of the record. J. Entry, Jan. 31, 2006, at ¶ B23. In its judgment entry, the trial court set forth the statutory factors noted above, it set forth the standard of review, and it applied specific factual findings to the relevant statutory factors. Id. at ¶¶ B 1-37. The trial court also made additional factual findings, naming the people involved in Bailey's life and establishing their living arrangements, detailing the parties' current employment, and mentioning that neither party, nor Bailey, has any disabilities. Id. at ¶¶ B 24-36.
 {¶ 8} As to R.C. 3109.04(F)(1)(a), the trial court found that both parents wish to be Bailey's legal custodian. Id. at ¶ B 37(a). The trial court did not conduct an in camera interview with Bailey because neither parent requested it. Id. at ¶ B 37(b). See also R.C. 3109.04(F)(1)(b). Likewise, the trial court did not appoint a guardian ad litem. Id. As to R.C.3109.04(F)(1)(c), the trial court summarized the testimony concerning Bailey's current living situation and her families. The court noted the disputed testimony as to whether Drucilla was a suitable mother and her abilities to maintain a clean home. Id. at ¶ B 37(c). The court noted testimony that both John and Drucilla had used drugs when they lived together; that John was physically violent with Drucilla and Brian; that Bailey is dirty and has been covered with flea bites when her visitation begins with John; and that John maintains a clean home with Denise and has never physically abused her. Id.
 {¶ 9} The court noted that Bailey has a dog and a cat, who live inside, and two dogs, who live outside, at Drucilla's home, and she is currently enrolled in pre-school. Id. at ¶ B 37(d). See also R.C. 3109.04(F)(1)(d). As to the parties' mental and physical health, the court noted Drucilla's accusations of physical abuse. Id. at ¶ B 37(e). However, the court found that Drucilla had failed to seek medical treatment or report John to law enforcement, and John denied the allegations. Id. The court found that Drucilla had been "depressed"[2] when she lived with John, but is not currently depressed. Id. Drucilla testified that she fears for Bailey's life every time she is with John; however, Drucilla allowed John to take Bailey to Florida for a family funeral, and she testified that John could have Bailey for the summer and for regular visitation. Id. As to R.C.3109.04(F)(1)(f), the court found that the parties have developed and maintained their own visitation schedule. Id. at ¶ B 37(f). The parties exchange Bailey in Kenton, Ohio. Id. However, the court noted that police were called to the parties' apartment after Drucilla moved out and later returned to retrieve her personal belongings. Id. The court found that Drucilla brought friends to help her move, and those friends threatened John. Id. The court noted the conflicting testimony as to whether Drucilla gave John her new address when she left him in 2003. Id.
 {¶ 10} The court found that neither party had been ordered to pay child support, and John contends he has provided for Bailey's needs when she lives with him. Id. at ¶ B 37(g). See also R.C.3109.04(F)(1)(g). The trial court found that John had a felony conviction, but had successfully completed probation, and that John was involved in stabbing a 12 year old when he was a juvenile. Id. The court again noted the allegations of physical abuse, and Drucilla's failure to report it. Id. Neither party requested a shared parenting agreement, and neither party has established, or plans to establish a residence out of state. Id. at ¶ B 37(i)-(j). See also R.C. 3109.04(F)(1)(i)-(j).
 {¶ 11} The court listed, but did not address, the factors of R.C. 3109.04(F)(2) because there is no shared parenting plan. The court then found it in the child's best interest to award legal custody to John and name him Bailey's residential parent. Id. at ¶ C 2. The trial court determined that although Drucilla has been "the primary care giver of Bailey since she moved out in July, 2003, [Drucilla] has been inconsistent and unreasonable with her actions involving this child." Id. at ¶ B 23.[3] Therefore, the court did consider the fact that Drucilla had been the primary caregiver, even though it did not list that fact under its analysis of any statutory factor. As to the inconsistencies, the trial court reasoned that Drucilla had alleged physical and verbal abuse against her and her children, but failed to seek help for her or the children and failed to take any action to prevent future abuse. Id. The trial court noted Drucilla's fear for Bailey's safety, but her willingness to allow out of state trips, summer visitation, and regular visitation with John; Drucilla's self-diagnosed depression, and her failure to seek treatment and/or diagnosis; Drucilla's failure to address a flea infestation at her home until after John raised concerns about the flea bites covering Bailey's legs and back; and Drucilla's assertions that she keeps a clean home, even though Bailey arrives for John's visitation in dirty clothing. Id.
 {¶ 12} Our review of the record indicates some inconsistent testimony; however, the trial court was in the better position to weigh the credibility of the witnesses. In its review, the court addressed each statutory factor. On this record, we cannot find the trial court abused its discretion in designating John as Bailey's residential parent and legal custodian. The sole assignment of error is overruled.
 {¶ 13} The judgment of the Seneca County Common Pleas Court, Juvenile Division, is affirmed.
Judgment Affirmed.
 Rogers and Shaw, JJ., concur.
[1] Neither party states otherwise, and this litigation has ensued, so we assume the paternity test established that John is Bailey's biological father.
[2] Drucilla testified she was depressed, but did not present any evidence of a medical or psychological diagnosis.
[3] It appears that the trial court incorrectly numbered the paragraphs in its judgment entry. The quoted paragraph is found at the bottom of page 28 in Appellant's brief.