[Cite as *In re T.Y.*, 2019-Ohio-4820.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

In re T.Y., T.J.                                    Court of Appeals No. L-19-1143

                                                    Trial Court No. JC 17263139

                                                    **DECISION AND JUDGMENT**

                                                    Decided:  November 22, 2019

* * * * *

Laura A. Kendall, for appellant.

Jill E. Wolff, for appellee.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} This is an appeal from the judgment of the Lucas County Court of Common Pleas, Juvenile Division, which awarded permanent custody of the minor children, T.Y. and T.J., to appellee, Lucas County Children Services ("LCCS"), thereby terminating the parental rights of mother-appellant, D.Y.[1]  For the reasons that follow, we affirm.

---

[1] The trial court also terminated the parental rights of the unknown father(s) of the children.

## I. Facts and Procedural Background

{¶ 2} This case began when LCCS filed a complaint in dependency and neglect in June 2017. The complaint alleged that on June 1, 2017, Toledo police officers found mother in a parking lot swinging a knife and threatening to hurt another woman who she believed to be in a relationship with T.J.—a man with whom mother had been in a relationship. T.Y., then 20 months old, and T.J., then one month old, were with mother at the scene. T.J. was initially alleged to be the father of the children, but was ruled out through genetic testing. The complaint further alleged that mother and T.J. had pending criminal charges, and that both had a history of domestic violence.

{¶ 3} Based upon the complaint, a shelter care hearing was held, and the children were placed in the interim temporary custody of LCCS. On July 25, 2017, the children were adjudicated dependent. On February 8, 2019, LCCS moved for permanent custody of the children. The matter proceeded to a hearing on June 7, 2019.

{¶ 4} At the June 7, 2019 hearing, counsel for mother requested to withdraw, stating that she had not spoken to mother since April 12, 2019, despite repeated attempts to contact her for the purpose of gathering witness lists and exhibits to prepare for trial. Counsel did disclose that the night before trial, mother texted counsel asking counsel to withdraw a warrant for her. Counsel replied to mother that she could not do that because it was 7:00 p.m. and the court was closed, after which she did not hear from mother again despite counsel making multiple attempts to contact her. Mother did not appear for the June 7, 2019 hearing. Ultimately, at the court's request, counsel remained to protect mother's interests through cross-examination of the witnesses presented by LCCS.

2.

{¶ 5} Two witnesses testified at the June 7, 2019 hearing. The first was LaShawnda Holmes, the ongoing caseworker. Holmes testified that the initial case plan for mother provided for a dual diagnostic assessment, for mother to follow any recommendations from the assessment, for random drug screens, and for mother to receive domestic violence batterer's services. The plan was later amended to include domestic violence victim's services.

{¶ 6} Holmes testified that mother completed the diagnostic assessment in February 2018, and was diagnosed with adjustment disorder/depressive mood. Based on the assessment, mother was recommended for counseling and other health services. Mother declined all services.

{¶ 7} Holmes also testified that mother has been asked to drop over 15 urine screens. Mother provided the first screen and the test was negative for any substances. Mother then failed to provide any other urine screens. Holmes testified that the failure to provide screens concerned her because mother had admitted to using marijuana in the past, and on one home visit mother's home smelled of marijuana.

{¶ 8} Holmes then testified that mother has not been cooperative in speaking with LCCS. Holmes testified that mother does not return her calls and fails to show up for appointments.

{¶ 9} As to mother's history of domestic violence, Holmes testified that in addition to the June 2017 incident, mother was the aggressor in a domestic violence incident in June 2018, and was the victim in a domestic violence incident also in June 2018, which led to a temporary protection order against her boyfriend. Holmes testified,

3.

however, that mother and the boyfriend were not abiding by the temporary protection order, and on May 16, 2019, Holmes observed mother and the boyfriend yelling and arguing with each other. Holmes then learned that the police had been called regarding the two in March 2019.

{¶ 10} Holmes next testified regarding mother's visitation with the children. Holmes testified that the last time mother physically saw the children was October 28, 2018, and the time before that was in June 2018. Holmes testified that she has made numerous attempts to schedule visits, but throughout the life of the case mother has been inconsistent. Most recently, Holmes attempted to schedule two visits in April 2019. When mother arrived for the first visit, she found out that it was a Level 1 visit, became upset, and left before the children arrived. Mother then cancelled the second visit. Holmes testified that since then they have kept mother in the rotation to visit with the kids on Tuesdays, but mother does not come.

{¶ 11} Finally, Holmes testified that the children are doing well in their current foster placement. She explained that T.Y. has a medical issue from birth that is now being treated, the kids are bonding with the family, and they are comfortable with the foster parents. Holmes described the placement as a loving home. Holmes testified that it was her recommendation that permanent custody to LCCS is in the best interest of the children.

{¶ 12} The second witness to testify was the guardian ad litem, John Winzlick. Winzlick echoed Holmes's observation that mother has been uncooperative with any of

4.

the case plan services. He also testified that mother refused to meet with him in person, and he has had a difficult time making contact with her over the telephone.

{¶ 13} As to the children, Winzlick testified that they are doing well. The children recently started daycare, and Winzlick relayed that they have had no issues. Winzlick concluded that it was his opinion that permanent custody was in the children's best interests.

{¶ 14} Following the hearing, the trial court found by clear and convincing evidence that the children cannot and should not be placed with mother within a reasonable period of time, and that an award of permanent custody to LCCS is in the children's best interest. Specifically, the trial court found R.C. 2151.414(E)(1), (2), (4), (10), and (16) applicable to whether the children could be placed with mother within a reasonable time.

## II. Assignments of Error

{¶ 15} Mother has timely appealed the trial court's judgment terminating her parental rights, and now asserts two assignments of error for our review:

I. The trial court erred in granting appellee Lucas County Children Services' motion for permanent custody as against the manifest weight of the evidence, pursuant to O.R.C. 2151.414(B)(1)(a).

II. The state did not prove by clear and convincing evidence that the children could not be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents pursuant to R.C. 2151.414(B)(1)(a).

5.

## III. Analysis

{¶ 16} In her first assignment of error, mother argues that the trial court's findings that the children cannot or should not be placed with mother within a reasonable period of time were against the manifest weight of the evidence.

{¶ 17} In order to terminate parental rights and award permanent custody of a child to a public services agency under R.C. 2151.414, the juvenile court must find, by clear and convincing evidence, two things: (1) that one of the enumerated factors in R.C. 2151.414(B)(1)(a)-(e) apply, and (2) that permanent custody is in the best interests of the child. R.C. 2151.414(B)(1). Clear and convincing evidence is that which is sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. The clear and convincing standard requires more than a preponderance of the evidence, but it does not require proof beyond a reasonable doubt. *Id.*

{¶ 18} "A trial court's determination in a permanent custody case will not be reversed on appeal unless it is against the manifest weight of the evidence." *In re A.H.*, 6th Dist. Lucas No. L-11-1057, 2011-Ohio-4857, ¶ 11, citing *In re Andy-Jones*, 10th Dist. Franklin Nos. 03AP-1167, 03AP-1231, 2004-Ohio-3312, ¶ 28. We recognize that, as the trier of fact, the trial court is in the best position to weigh the evidence and evaluate the testimony. *Id.*, citing *In re Brown*, 98 Ohio App.3d 337, 342, 648 N.E.2d 576 (3d Dist.1994). Thus, "[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being

6.

against the manifest weight of the evidence." *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus.

{¶ 19} R.C. 2151.414(B)(1)(a) provides that a trial court may grant permanent custody of a child to the agency if it finds that, in addition to the placement being in the best interest of the child,

> The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, * * * and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

R.C. 2151.414(E) requires a trial court to find that a child cannot be placed with either of the child's parents within a reasonable time or should not be placed with either parent if any of sixteen factors are met. Here, the trial court found that R.C. 2151.414(E)(1), (2), (4), (10), and (16) applied to mother.

{¶ 20} Mother argues against all of the trial court's findings, but because only one factor is needed to support the trial court's conclusion under R.C. 2151.414(B)(1)(a), we will address mother's arguments only as they pertain to R.C. 2151.414(E)(4) and (10).

{¶ 21} The factor stated in R.C. 2151.414(E)(4) is "The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child." The factor under

7.

R.C. 2151.414(E)(10) is "The parent has abandoned the child." Pursuant to R.C. 2151.011(C), "a child shall be presumed abandoned when the parents of the child have failed to visit or maintain contact with the child for more than ninety days, regardless of whether the parents resume contact with the child after that period of ninety days."

{¶ 22} Here, mother has not seen her children since October 28, 2018, which was over seven months before the June 7, 2019 hearing. Mother contends that her failure to visit the children can be attributed to the fact that at an unknown earlier visitation mother was arrested on an outstanding warrant. However, we do not find that the desire to avoid capture for previous criminal conduct is a justifiable excuse to avoid visitation with one's children. Moreover, mother's failure to visit cannot be entirely attributed to the arrest issue as she did appear for a visitation in April 2019, but left before seeing the children because she was upset with the level of visitation. Therefore, we hold that the trial court's determination under R.C. 2151.414(E)(4) and (10) is not against the manifest weight of the evidence.

{¶ 23} Accordingly, mother's first assignment of error is not well-taken.

{¶ 24} In her second assignment of error, mother argues that the state did not prove by clear and convincing evidence that permanent custody was in the best interests of the children.[2] R.C. 2151.414(D)(1) provides that in determining the best interest of a child, the court shall consider all relevant factors, including:

---

[2] The text of mother's listed assignment of error pertains again to the finding of whether the children cannot and should not be placed with the mother within a reasonable period of time. However, the body of mother's argument mainly addresses whether permanent custody is in the children's best interest. We will discuss the issue as argued.

8.

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period * * *;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶ 25} In this case, the record reveals that the children have been in the temporary custody of the agency for nearly two years, and the children have not seen their mother in over seven months. In addition, there was testimony that the children are doing well in their placement; they are in a loving home, are comfortable with their foster parents, are bonding with the family, and previously unaddressed medical needs are now being treated. Finally, the guardian ad litem testified that it was his opinion that permanent custody was in the best interest of T.Y. and T.J., who at the time of the hearing were

9.

three and two years old, respectively.  Therefore, we hold that the trial court's finding that permanent custody was in the best interests of the children was not against the manifest weight of the evidence.

{¶ 26} Accordingly, mother's second assignment of error is not well-taken.

### IV. Conclusion

{¶ 27} For the foregoing reasons, we find that substantial justice has been done the party complaining, and the judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed.  Mother is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Mark L. Pietrykowski, J.            _____
                                                 JUDGE
Arlene Singer, J.           

                                                 _____
Gene A. Zmuda, J.                                        JUDGE
CONCUR.

                                                 _____
                                                 JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.